The STATE of Ohio, Appellee,

v.

SHOOP, Appellant.

[Cite as *State v. Shoop* (1993), 87 Ohio App.3d 462.]

Court of Appeals of Ohio,
Hancock County.

No. 5–92–14.

Decided Feb. 24, 1993.

*Robert Fry*, Hancock County Prosecuting Attorney, for appellee.

*R. William Meeks* and *Samuel H. Shamansky*, for appellant.

EVANS, Presiding Judge.

This is an appeal by Frank R. Shoop from a judgment of the Common Pleas Court of Hancock County rendered on a jury verdict finding him guilty of felonious sexual penetration in violation of R.C. 2907.12(A)(1)(b), an aggravated felony of the first degree.

On March 19, 1991, appellant was indicted by the Hancock County Grand Jury on one count of felonious sexual penetration in violation of R.C. 2907.12(A)(1)(b). At his jury trial, the state claimed that on the morning of September 12, 1990, appellant inserted something into his stepdaughter's vagina while he was bathing her.

Appellant married Elizabeth (Beth) Wilkins in December 1989. The couple lived together with their infant son, Elijah Shoop, and Beth's two other children, Emily Wilkins, age two and one-half years, and Eric Wilkins, age fifteen. On September 12, 1990, Beth Wilkins–Shoop left for work at approximately 3:45 a.m. Prior to leaving for work, she took Emily to use the bathroom, then placed her back in bed. While helping Emily in the bathroom, Beth observed Emily's vaginal area and did not notice anything unusual or out of the ordinary.

Mary Wilkins, Emily's grandmother, lived across the street from appellant, approximately one hundred yards away. She testified that Eric came to her house around 6:15 that morning to eat breakfast and await the school bus. At approximately 6:40 a.m. Mary Wilkins heard Emily crying. Although it was peculiar to hear Emily crying from such a distance, she did not go to investigate. She thought appellant was simply having a difficult time getting Emily ready to go to the baby-sitter. She also noted that it was unusual for appellant and the children to still be home at that time. Normally after Eric came to her house, appellant would get himself ready for work, place Emily and Elijah in the car and take them to the baby-sitter.

There is a factual discrepancy regarding the time appellant arrived at the baby-sitter's home and what Emily was wearing when she was dropped off for the day. Elizabeth Arreguin, the children's baby-sitter, testified that appellant arrived at 8:00 a.m. and that Emily was bathed and fully dressed. Elijah was still wearing his pajamas. Arreguin indicated that appellant's arrival was later

than the normal time and that both children usually arrived wearing pajamas and wrapped in a blanket or coat. In contrast, appellant claims he arrived at the baby-sitter's home around 7:30 a.m. He also indicated that he did not bathe Emily that morning, but rather that he had bathed her the night before. Finally, appellant claimed Emily was still wearing pajamas when he dropped her off at Arreguin's house.

While at Arreguin's home, Emily was strangely quiet and withdrawn from the other children. She lay on the floor and hid under her blanket. Around lunchtime, Arreguin was informed by another child that Emily had gone to the bathroom in her pants. Because Emily was potty trained, it was unusual for her not to use the toilet. Arreguin went to Emily, who was shaking and crying hysterically. She took Emily to the bathroom to clean her up. During this time, Emily continued to cry and tremble. Because Emily did not bring an extra pair of clean underpants, Arreguin decided to place a diaper on her. As Arreguin laid Emily on the floor and placed the diaper under her, Arreguin noticed a small amount of dried blood around Emily's vaginal area. A second adult who was with Arreguin, Lisa Griffin, also observed the dried blood, as well as Emily's peculiar behavior that morning.

Arreguin contacted the children's services board and Beth Wilkins–Shoop. Emily was taken to Blanchard Valley Hospital and examined by the emergency room doctor, who also noticed a small amount of dried blood on Emily's vaginal area. The doctor did not notice any obvious signs of injury. Two days later, on September 14, 1990, Emily was taken to the Medical College of Ohio, where she was examined by Dr. Gemmill, a pediatrician specializing in child sexual abuse. Dr. Gemmill examined Emily's vaginal area using a special device called a colposcope. The doctor observed a bruise to Emily's posterior fourchette and indicated that it had been caused by a blunt object entering the area. There was also a petechial lesion on the hymen. The doctor concluded Emily's injuries were the result of sexual abuse. Similarly, Dr. Rhoads, a child development specialist who met with Emily and observed her behavior, concluded Emily was the victim of sexual abuse.

After hearing all of the evidence, the jury found appellant guilty of the offense. The jury also made a special finding that appellant purposely compelled the victim to submit by force or threat of force. In spite of this special finding by the jury, the trial court did not sentence appellant to life in prison as required by R.C. 2907.12(B). Instead, the court sentenced appellant to an indeterminate prison term of not less than ten years nor more than twenty-five years, pursuant to R.C. 2929.11.

From this judgment, appellant appeals, asserting five assignments of error.

### FIRST ASSIGNMENT OF ERROR

"The trial court erred in overruling appellant's timely motion for acquittal made pursuant to Crim.R. 29, and by failing to grant a judgment of acquittal on its own motion, thereby depriving him of due process of law as guaranteed by the federal and state Constitutions."

■ Appellant contends the state failed to prove he inserted anything into Emily's "vaginal cavity" as required by R.C. 2907.12(A)(1), which reads:

"No person without privilege to do so shall insert any part of the body, or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when either of the following apply:

"(a) * * *

"(b) The other person is less than thirteen years of age, whether or not the offender knows the age of such person."

Appellant based his motion for acquittal upon the testimony of Dr. Gemmill, who indicated that the injuries he observed were not located in Emily's "vaginal cavity," but on her posterior fourchette and hymen. The relevant testimony of Dr. Gemmill is as follows:

"[Prosecutor] Doctor, you indicated in describing what is depicted [on the slide photograph of] certain areas of Emily's vaginal area, specifically the posterior fourchette and the hymen. For the record, are those parts of her anatomy within her vaginal cavity?

"[Witness] Not within the vaginal cavity, no. The vaginal cavity begins immediately behind this somewhat convoluted group of tissue which is the hymen, but a vagina actually begins just behind that.

"* * *

"[Prosecutor] Dr. Gemmill, would you explain to the ladies and gentlemen of the jury this particular area of Emily's body in terms of I guess the order where everything is located?

"[Witness] I think we'll start from the back end and come out. The vagina lies directly behind the hymenal tissues. And this particular picture is quite obscured. We can't see it because of the folds of the hymen. The area—the vaginal area is probably not a good term to use. The anatomical term we would use for this whole area, including the posterior fourchette, the hymen, the clitoris, bounded by—and the labium majora is the vestibule. It's the area between the labium majora which we have opened up with our examination. And the best term for this, and the term that is generally accepted, is the vestibule posterior

fourchette. Being part of the vestibule—the hymen tissues being part of the vestibule. The clitoris, the labia majora, all being part of the vestibule. The vagina actually has its beginning just behind the hymen and moves interior into the child's body."

On cross-examination by appellant, the doctor reiterated that the injuries were caused by some blunt object entering the area and that there was no injury to the vaginal cavity. On redirect examination, the prosecutor attempted, unsuccessfully, to have the doctor indicate that the object which caused the visible injuries may have also entered Emily's vagina:

"[Prosecutor] Doctor, based upon your examination of Emily, and what you observed in terms of the trauma to the posterior fourchette, and the trauma to the hymen, do you have an opinion within a reasonable degree of medical probability whether or not the blunt object or instrument would have entered her vaginal cavity.

"[Appellant's attorney]: Objection.

"THE COURT: Overruled.

"THE WITNESS: I do not have—I can't make that statement."

Crim.R. 29(A) authorizes the trial court to enter a judgment of acquittal if the evidence is insufficient to sustain a conviction on the offense charged. However, a trial court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions whether a material element of the crime has been proven beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus. Further, in reviewing a ruling on a Crim.R. 29 motion for judgment of acquittal, a reviewing court must construe the evidence in a light most favorable to the prosecution. *State v. Wolfe* (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689, 690.

In the present case, there was sufficient evidence presented for the jury to find appellant inserted some object into Emily's vaginal canal. Dr. Gemmill stated the vagina was located just behind the hymen. He also testified there was a petechial lesion on Emily's hymen and that the injuries were the result of sexual abuse. This court has previously held that some penetration, however slight, is sufficient to constitute a violation of R.C. 2907.12(A)(1)(b). *State v. Recker* (Dec. 12, 1991), Putnam App. No. 12–90–7, unreported, 1991 WL 261830. Because the hymen is located directly at the front of the opening to the vagina and there was a definite injury to the hymen, we conclude there was sufficient evidence for the jury to find penetration of the vagina by whatever object caused

the injury to the hymen.[1] It is not necessary that the hymen be broken or that there be any injury to the vagina in order to find a defendant guilty of felonious sexual penetration. Accord *State v. Carpenter* (1989), 60 Ohio App.3d 104, 573 N.E.2d 1206.

There was sufficient evidence such that reasonable minds could reach different conclusions whether each material element of the offense had been proven beyond a reasonable doubt. The trial court did not err in overruling appellant's motion for judgment of acquittal.

Appellant's first assignment of error is overruled.

## SECOND ASSIGNMENT OF ERROR

"The trial court's failure to grant appellant's motion for an independent psychological examination of the alleged victim deprived him of a fair trial and due process of law as guaranteed by the federal and state Constitutions."

Prior to trial, appellant filed a motion to have Emily examined by an independent psychologist. Appellant claims this examination was a necessity because the state intended to use the testimony of Dr. Rhoads, the child development specialist who performed a psychological examination of Emily. After conducting a hearing, the court overruled appellant's motion.

Crim.R. 16 identifies what information is discoverable in criminal cases. This rule neither permits nor excludes demands for psychological examinations of child victims. The granting or overruling of various discovery motions in a criminal case rests within the sound discretion of the trial court, and only in cases of clear abuse will that discretion be disturbed on appeal. *State v. Laskey* (1970), 21 Ohio St.2d 187, 192, 50 O.O.2d 432, 434, 257 N.E.2d 65, 68. See, also, *State v. Stutts* (Jan. 2, 1991), Lorain App. No. 90CA004879, unreported, 1991 WL 1964.

A criminal defendant is not automatically entitled to the expenditure of funds for an expert witness simply because the prosecution intends to call an expert to testify in its case in chief. Nor is the trial court always required to conduct a hearing on such a request. See *State v. Tomlinson* (1986), 33 Ohio App.3d 278, 515 N.E.2d 963 (the trial court's refusal to conduct an evidentiary hearing on defendant's request for a psychological examination of a rape victim was not an abuse of discretion). A psychological examination of an infant child alleged to be the victim of sexual abuse has numerous intrinsic dangers, and

---

1. In ruling as we do, we do not find it necessary to embark upon a discussion of possible interpretations of the term "vaginal cavity" as used by the General Assembly in R.C. 2907.12.

permission to conduct such an examination should not be granted lightly. *Stutts, supra,* at 6.

In the present case, the trial court conducted a hearing on appellant's motion to have an expert witness examine Emily. However, a transcript of this hearing is not contained in the record. The trial court's journal entry overruling appellant's motion does not explain the basis for the trial court's decision. Thus, there is no evidence in the record before us to demonstrate that the trial court abused its discretion in overruling appellant's motion for an expert witness. Appellant has failed to demonstrate his claim of error.

Appellant's second assignment of error is overruled.

Because of their similarities, we address appellant's next two assignments of error together.

### THIRD ASSIGNMENT OF ERROR

"The trial court's failure to grant Appellant's motion to voir dire the two-year-old alleged victim in order to determine her competency prior to admitting her hearsay statements into evidence, denied him due process of law as guaranteed by the federal and state Constitutions and his right of confrontation as guaranteed by the Sixth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution."

### FOURTH ASSIGNMENT OF ERROR

"The trial court erred in admitting the hearsay statement of the two-year-old alleged victim pursuant to Evidence Rule 803(2), the "excited utterance" exception to the hearsay rule, thereby depriving Appellant of his right of confrontation and due process of law as guaranteed by the federal and state Constitutions."

Prior to trial, appellant requested that the court conduct a voir dire examination of Emily to determine her competency. The trial court found no need to conduct such an examination. At trial, the state identified appellant as the perpetrator of the offense by using Emily's statements made to Beth Wilkins–Shoop, Arreguin and Griffin identifying appellant as the individual who had hurt her. Emily was not called to testify. The trial court admitted these hearsay statements as excited utterances pursuant to Evid.R. 803(2).

Appellant claims: "[I]f out-of-court statements of a two-year-old child are sought to be introduced into evidence, a trial court must make an initial determination as to whether or not that witness is competent prior to the admission of the statements." We disagree. This issue has been previously considered by the Supreme Court of Ohio, which held: "The testimonial incompe-

tency of a child declarant does not bar the admission of the child's declarations as excited utterances." *State v. Wallace* (1988), 37 Ohio St.3d 87, 524 N.E.2d 466, paragraph three of the syllabus. There was no need for the trial court to conduct an examination of Emily prior to the admission of her out-of-court identification of appellant. Under *Wallace,* Emily's statements identifying appellant, provided they were made in response to proper questioning,[2] would have been admissible even if the court determined her to be incompetent to testify at trial.

Also, the Supreme Court of the United States has indicated that the Confrontation Clause does not require that a declarant be produced at trial or be found unavailable before her out-of-court statements may be admitted into evidence. *United States v. Inadi* (1986), 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390. See, also, *White v. Illinois* (1992), 502 U.S. ——, 112 S.Ct. 736, 116 L.Ed.2d 848.

■ We next address whether Emily's statements were excited utterances as contemplated by Evid.R. 803(2). If the statements were excited utterances, then the trial court did not err in admitting Emily's out-of-court identification of appellant as the perpetrator of the offense. Appellant claims Emily's hearsay statements allegedly identifying him as the individual who hurt her were not made while she was "under the stress of excitement caused by the event or condition." Evid.R. 803(2). He asserts Emily's excitement was caused, not by anything he did to her, but rather by her soiling her pants.

■ The Supreme Court of Ohio has set forth a four-part test for determining what constitutes an "excited utterance":

"The excited-utterance exception is essentially a codification of Ohio common law governing spontaneous exclamations. At common law, this court applied a four-part test in determining what constituted a spontaneous exclamation:

" '(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective,

" '(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement. to lose a domination over his reflective faculties, so that such domination *continued* to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,

---

2. Appellant does not challenge the propriety of the questions asked of Emily when she identified him as the perpetrator of the offense.

472

" '(c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and

" '(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.' *Potter v. Baker* (1955), 162 Ohio St. 488, 55 O.O. 389, 124 N.E.2d 140, paragraph two of the syllabus (followed and approved in *State v. Duncan* [1978], 53 Ohio St.2d 215, 7 O.O.3d 380, 373 N.E.2d 1234, paragraph one of the syllabus)." (Emphasis *sic.*) *State v. Wallace* (1988), 37 Ohio St.3d 87, 89, 524 N.E.2d 466, 469.

This test has been liberally applied to out-of-court statements made by child declarants who are alleged victims of sexual abuse. `State v. Wagner* (1986), 30 Ohio App.3d 261, 30 OBR 458, 508 N.E.2d 164. Moreover, the trial court has broad discretion to determine whether a declaration should be admissible as a hearsay exception. *State v. Dever* (1992), 64 Ohio St.3d 401, 410, 596 N.E.2d 436, 444 (citing *State v. Rohdes* [1986], 23 Ohio St.3d 225, 229, 23 OBR 382, 385–386, 492 N.E.2d 430, 434). See, also, *State v. Duncan* (1978), 53 Ohio St.2d 215, 7 O.O.3d 380, 373 N.E.2d 1234.

In the present case, we find no abuse of discretion by the trial court. There was sufficient evidence to indicate Emily was not acting normally after she arrived at the baby-sitter's home. She was withdrawn from the other children and lay on the floor, hiding under a blanket. When she made the statement identifying appellant, she was crying and trembling.

■ We do not agree with appellant's assertion that Emily's quiet, withdrawn attitude prior to soiling her underpants demonstrated a break in the excitement over the startling event with appellant. Such passive behavior was atypical of Emily. A lapse of time between the startling event and the out-of-court statement is not dispositive in the application of Evid.R. 803(2). *Duncan,* 53 Ohio St.2d at 219–222, 7 O.O.3d at 383–384, 373 N.E.2d at 1237–1238. A continual state of visible excitement between the time of the startling incident until the declarant makes her excited utterance is not required. Rather, the excitement of the incident must be dominant over the declarant when she makes the statement. The focus is whether the excitement of the incident was still dominant over the child declarant's thought processes and whether the child's statements were the unreflective expressions of her belief. *State v. Fox* (1990), 66 Ohio App.3d 481, 489, 585 N.E.2d 561, 565.

Although a young child may become upset over soiling her pants, the evidence indicates Emily was still under the influence of the incident with appellant. The trial court did not abuse its discretion in admitting these statements. It was for the jury to determine how much weight to give these statements. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

Appellant's right to confront witnesses against him was not violated by the use of Emily's hearsay statements. The United States Supreme Court held in *White v. Illinois* (1992), 502 U.S. ——, 112 S.Ct. 736, 116 L.Ed.2d 848, that the Confrontation Clause does not require the prosecution to produce the declarant or show that the declarant is unavailable to testify before the trial court admits testimony under the excited utterance exception to the rule against hearsay. The admission of a hearsay statement which has "sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule" does not violate a defendant's right to confront witnesses. *Id.* at ——, 112 S.Ct. at 743, 116 L.Ed.2d at 859. The Supreme Court of Ohio followed this holding in *State v. Dever* (1992), 64 Ohio St.3d 401, 596 N.E.2d 436, where the court found that a child declarant's statements identifying the perpetrator of sexual abuse, and made for the purpose of medical diagnosis and treatment, were admissible pursuant to the firmly rooted hearsay exception of Evid.R. 803(4) and that the defendant's right of confrontation was not violated by the admission of the statements. *Id.*, 64 Ohio St.3d at 419, 596 N.E.2d at 450. Because the excited utterance exception to the rule against hearsay is firmly rooted with sufficient guarantees of trustworthiness, appellant's constitutional right to confront witnesses was not violated.

Appellant's third and fourth assignments of error are overruled.

## FIFTH ASSIGNMENT OF ERROR

"The trial court erred in instructing the jury on the issue of force where no such allegation was contained in the indictment, thereby depriving appellant of due process of law and the right to be charged by way of an indictment as guaranteed by the federal and state Constitutions."

In the final charge to the jury, the trial court, over defense objection, instructed the jury that it was also to decide whether appellant used force to commit the offense. Such a finding would then elevate the punishment to life imprisonment. R.C. 2907.12(B). Appellant argued this instruction was improper because the use of force was not claimed in the indictment filed against him. In determining appellant was guilty of the offense, the jury found that he used force. The trial court, however, declined to impose a life sentence. Instead, the court sentenced appellant to an indeterminate prison term of not less than ten years nor more than twenty-five years, pursuant to R.C. 2929.11.[3] In doing so, the

---

3. The state filed a motion requesting leave to appeal the trial court's sentence, but on May 26, 1992, this court denied the state permission to do so. The state's subsequent appeal to the Supreme Court of Ohio was also denied. *State v. Shoop* (1992), 65 Ohio St.3d 1477, 604 N.E.2d 169.

court determined the use of force was implicit in the charge itself and that the jury's finding was "mere surplusage."

Because appellant was sentenced as though the jury had not returned a finding that he used force to commit the offence, he was not prejudiced by the jury instruction. Absent a showing of prejudice, appellant's final assignment of error is overruled.

Having found no error prejudicial to appellant herein in any of the particulars assigned and argued, the judgment of the trial court is affirmed.

*Judgment affirmed.*

HADLEY and SHAW, JJ., concur.