JUDGMENT: Judgment affirmed
ATTORNEYS:
 OPINION
This is an appeal by Defendant-Appellant, Derrick V. Harris, from a judgment of conviction and sentence rendered pursuant to a jury verdict of guilty on one count of felony domestic violence, a violation of 2919.25. For the following reasons, we affirm the judgment of the trial court.
The following facts are pertinent to this appeal:
Appellant has one child with twenty-two-year-old Melanie Alge. On July 11, 1998, Appellant and Melanie got into an argument at Melanie's residence; Appellant left the apartment sometime later that night. In the early morning hours of July 12, 1998, Appellant attempted to return to the apartment. After realizing that Melanie would not let him inside, Appellant threw himself against the door, breaking it open. Appellant then retrieved a hammer to try to fix the damaged doorjamb. Meanwhile, Melanie went into the kitchen to use the phone in order to call the police. Appellant grabbed the phone, threatened Melanie with the hammer and pushed her back into the living room.
While Appellant was again attempting to fix the door, Melanie got up to use the phone. Melanie dialed 911 emergency services and then quickly hung up when she realized Appellant was behind her. Appellant grabbed Melanie again and took her back to the living room, away from the phone. At that point, the phone began to ring because the emergency services dispatcher called back on the hang up. Appellant picked up the phone and the dispatcher could hear a female screaming in the background. The authorities were summoned to the scene immediately.
After Appellant disconnected the dispatcher, he ripped the phone out of the jack, grabbed Melanie by the hair and threw her against the wall while she was holding the couple's six-month-old daughter. A shelf and some knick-knacks fell off the wall, hitting both Melanie and the child. Appellant then held a knife over Melanie's head in a threatening manner. Melanie ran upstairs, locked herself and her child in a bedroom and waited for the authorities to arrive. Appellant fled the scene on foot. Melanie sustained a black eye and scratches on her neck and arms.
Based upon this evidence, the Hancock County Grand Jury indicted Appellant on one count of aggravated burglary and one count of domestic violence, violations of R.C. 2911.11(A)(1) and R.C. 2919.15 respectively. The domestic violence charge was classified as a fifth degree felony due to the fact that Appellant had previously been convicted of a similar offense.
Appellant pled not guilty to the charges and the matter proceeded to a jury trial in January 1999. After hearing all of the testimony, the jury returned a verdict of guilty on the domestic violence charge and not guilty on the burglary charge. Sentencing was delayed to allow for a presentence investigation. Thereafter, on April 2, 1999, the trial court conducted a hearing on sentencing and ordered Appellant to serve a twelve month prison term, the maximum allowable sentence on a fifth degree felony. Appellant thereafter filed the instant appeal, asserting two assignments of error for our review.
Assignment of Error I
 The trial court deprived Appellant of his right to confront his accuser and due process of law as guaranteed by the Sixth
and Fourteenth amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution by permitting improper hearsay statements to be admitted at trial in violation of the Rules of Evidence.
The record is clear that at the time of trial, Melanie's whereabouts were unknown to the authorities. Thus, the State called Patrick Brooks, an officer with the Fostoria Police Department, to testify about the events that Melanie described to him when he responded to the scene on the morning of the offense. Although both parties conceded that Melanie's statements to Officer Brooks were hearsay, the court admitted the evidence as an "excited utterance".
Initially, we must state that the decision to admit or exclude relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343, paragraph two of the syllabus. The decision will not be overturned by an appellate court absent the showing of an abuse of discretion. State v. Martin (1985), 19 Ohio St.3d 122, 129,483 N.E.2d 1157. An abuse of discretion has been described as an unreasonable, arbitrary or unconscionable decision. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Furthermore, pertinent case law states that the trial court should be afforded wide latitude in its determination of whether a statement should be admitted under the excited utterance exception to the hearsay rule. State v. Wagner (1986), 30 Ohio App.3d 261,263, 508 N.E.2d 164.
Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible. See Evid.R. 802. However, a number of exceptions exist, including one for an "excited utterance", which is defined by Evid.R. 803(2) as:
 A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
Moreover, although certain hearsay exceptions are not properly applicable unless it can be shown that the declarant is unavailable, as defined in Evid.R. 804(A), the exception for an excited utterance does not require a demonstration of the declarant's unavailability. See Evid.R. 803.
The Supreme Court of Ohio has set forth a four-prong test to determine whether statements are admissible as excited utterances:
 Testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds
 (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective,
 (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,
 (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and
 (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.
State v. Duncan (1978), 53 Ohio St.2d 215, 373 N.E.2d 1234, paragraph one of the syllabus, approving and following Potter v. Baker (1955), 162 Ohio St. 488, 124 N.E.2d 140, paragraph two of the syllabus.
In the case herein, Appellant asserts that Melanie's statements were the product of reflective, rather than spontaneous thoughts. Appellant first claims that the statements were improperly characterized as an excited utterance because of the lapse of time between the actual incident and the point at which Officer Brooks began to question the victim.
The record reveals that Officer Brooks was already on his way to Melanie's apartment as the dispatcher was returning the initial hang up call, which came in at 5:38 a.m. Officer Brooks testified that it had taken him no more than two minutes to arrive at the scene since Melanie's residence was located less than a mile from the Fostoria Police Station. The evidence also demonstrates that as the officer approached the apartment, he witnessed Melanie leaning out of the upstairs bedroom window, screaming that Appellant had "hurt the baby". The testimony further suggests that it took Officer Brooks a few minutes to get Melanie settled down enough to begin speaking in a coherent fashion.
Assuming that these few moments constitute a substantial lapse in time, as Appellant contends, that pause does not automatically render the evidence inadmissible. This court has held that:
 A lapse of time between the startling event and the out-of-court statement is not dispositive in the application of Evid.R. 803(2). * * * A continual state of visible excitement between the time of the startling incident until the declarant makes her excited utterance is not required. Rather, the excitement of the incident must be dominant over the declarant when she makes the statement. The focus is whether the excitement of the incident was still dominant over the * * * declarant's thought processes and whether the [declarant's] statements were the unreflective expressions of her belief. [Citations omitted.]
State v. Shoop (1993), 87 Ohio App.3d 462, 472, 622 N.E.2d 665. Thus, since time is not the central issue here, our analysis must shift to Melanie's demeanor as she made the statements in order to determine whether the excitement of the incident dominated her thoughts. In response to the prosecutor's questioning, Officer Brooks testified as follows:
 Q: Now, what did you instruct Melanie Alge to do as you observed her yelling and waving out the upstairs window?
 A: She was so incoherent because she was so agitated[,] crying, upset, yelling, that I couldn't, I really couldn't get a lot of information out of her. I of course told her to come down stairs so I could talk to her.
* * *
Q: How close did you get to Melanie Alge?
 A: Within arms length, I, she was, as she was rambling and crying, and that, I told her, told her she needed to settle down, so I asked her to sit down, * * *.
 Q: Beside her rambling that you just indicated, can you further describe her emotional demeanor as you observed her when she came to meet you in the front room?
 A: Melanie was very upset, she was crying, her eyes were * * * all watery, red faced, her hair was all disarrayed, almost half, almost half yelling, talking very fast. Just the statements she was making were pieces of sentences that, that she was bouncing back and forth between what she was trying to say. * * *
 Q: Did you observe any, did you observe her physical condition?
A: Yes, I did.
 Q: Can you describe her physical condition in terms of any marks or anything that you noted of significance?
 A: Melanie had a red mark which was a little darker than the red flushed face that she had from crying under her left eye. There was some scratch marks on her neck and on her shoulder bone. * * *
Q: Were you able to get her to calm down?
 A: Not completely, but I was able to get her to calm down enough that I was able to understand and track what she was telling me.
Q: And then did you have a conversation with her?
A: Yes, I just asked her what happened.
 Q: Now hang on. Now, during this conversation, would you describe any changes in her emotional condition or emotional demeanor?
A: The longer she talked, the more, the calmer she got.
 Q: You indicated that prior to the conversation she was crying, she was upset?
A: Yes.
Q: Did that cease or did it continue on?
A: No, she never really stopped crying, no.
Based upon this testimony, it appears that as Melanie spoke to the officer, she was still under the influence of the incident. At oral argument, Appellant's counsel argued that women, who are naturally prone to extended weeping fits, can cry and carry on without actually being under the excitement of an incident. This court finds no merit to such an outrageous assertion, which is not supported by the evidence presented in this case. Despite the fact that Melanie was eventually able to relay the events of the morning to Officer Brooks in a somewhat articulate manner, the unrefuted testimony demonstrates that her nervous excitement continued to dominate her reflective faculties throughout the conversation.
Appellant next argues that Melanie's statements were not the product of spontaneous thoughts because they were in response to questions from a police officer who was trained in eliciting certain incriminating answers. In addressing this issue, the Supreme Court of Ohio stated the following:
 The admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties.
State v. Wallace (1988), 37 Ohio St.3d 87, 524 N.E.2d 466, paragraph two of the syllabus. Based upon the record in this matter, we cannot conclude that Officer Brooks' questioning destroyed the unreflective nature of Melanie Alge's statements. Indeed, the only evidence concerning the questions that were actually posed to this victim was the statement that Officer Brooks merely asked her "what happened". Certainly, this unspecific query was not leading nor designed to coerce Melanie's answers, and any other conclusion from this court would be mere speculation.
With that stated, we now turn to Appellant's argument that the admission of this evidence violated his Sixth Amendment right to confront the witnesses against him. A hearsay statement that has "sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule" does not violate an offender's right to confront and cross-examine witnesses. White v. Illinois (1992), 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848; Shoop, 87 Ohio App.3d at 473. Because the excited utterance exception satisfies these criteria, Appellant's right to confront witnesses was not offended by the use of this evidence. Shoop at 473.
Since we are convinced that the trial court's decision to admit Melanie's statements under the excited utterance exception to the hearsay rule was not an abuse of discretion, Appellant's first assignment of error is overruled.
Assignment of Error II
 The trial court deprived the Appellant of his rights to fair sentencing under Ohio Revised Code [Section] 2929 [sic] by sentencing him to the maximum allowable sentence.
Appellant argues that the trial court erred in sentencing him to a twelve month prison term, the maximum allowable sentence for a fifth degree felony, because in doing so, the court improperly considered the circumstances of the burglary charge for which Appellant was ultimately acquitted. In support of this assertion, Appellant cites to State v. Patterson (1996), 110 Ohio App.3d 264,271, 673 N.E.2d 1001, for the proposition that it is erroneous to consider evidence of an acquitted charge. Although we agree with the Patterson holding, we find this case distinguishable.
We must first note that prior to imposing sentence, the trial court stated the following:
 Two things that I'm going to indicate will not be part of my fact finding process today. One is the fact that Mr. Harris has two counts and was acquitted of one * * *. That in no way will play a part in the Court's decision, the fact that he was acquitted as to one * * *. He was successful as to one and he will be sentenced accordingly only as to the count to which the jury finds him guilty based upon the applicable information and facts of that offense.
These statements certainly indicate that the trial court wanted to ensure that Appellant understood that a severe sentence was not intended as punishment for the burglary charge. Nonetheless, Appellant argues that subsequent statements made by the court indicate that the burglary charge did play a significant role in sentencing. In particular, in discussing the seriousness of the domestic violence offense and whether a prison term would be consistent with the purposes and principles of felony sentencing, the court stated that:
 This was a circumstance where you were enraged. You broke back into the house or at least you got in there in some manner without her [Melanie Alge's] permission and you caused her physical harm.
Appellant claims that because the court used the phrase "broke back into the house" that suggests that the court did consider the burglary charge. We are not persuaded. The evidence is clear that Appellant did break the door as he attempted to get into the house. Officer Brooks testified that he saw the damage to the doorjamb and Melanie's mother stated that although the door had been broken in the past, it had been fixed prior to this incident. Indeed, the court did not mention any other elements of burglary in its sentencing dialogue, thus, merely because the court focused on this one unrefuted fact, does not mean that the sentence was grounded on an improper consideration.
We also mention that the maximum penalty was appropriately imposed because the trial court's actions were consistent with the recent Ohio Supreme Court opinion set forth in State v. Edmonson (1999), 86 Ohio St.3d 324. R.C. 2929.19(B)(2)(d) requires a trial court to "make a finding that gives its reasons for selecting the sentence imposed" if the sentence is for one offense and is the maximum term allowed for that offense. The statute also requires a trial court to set forth its "reasons for imposing the maximum prison term."
Herein, the record demonstrates that the trial court found that "for the reasons stated on the record pursuant to R.C.2929.14(C), that the maximum prison term is necessary because the Defendant has committed the worst form of the offense and the Defendant poses the greatest likelihood of recidivism." Furthermore, as indicated in the above statement, these findings were appropriately supported by the court's statements of its reasons in support of all the mandated findings, found in pages 24-29 of the April 2, 1999, Transcript of the Sentencing Hearing. Therefore, Appellant's second assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
BRYANT, P.J., and HADLEY, J., concur.