OPINION.
Defendant-Appellant William Haverland was indicted on three counts of sexual battery and three counts of unlawful sexual contact with a minor, his nephew, Kevin Lockwood. Three different instances were alleged: (1) March 1, 2003, (2) February 8, 2003, and (3) February 22, 2003. The bill of particulars specified the time period for each crime and indicated that all the alleged crimes occurred at Haverland's workplace.
 {¶ 1} Haverland was tried before a jury and convicted for the March 1 and February 8 offenses. He was acquitted of the February 22 offenses. After a sexual-predator hearing, the trial court classified him as a sexual predator and sentenced him to a total of eight years in prison for his crimes.
 {¶ 2} Haverland appeals from this judgment, raising six assignments of error. We affirm.
 I. Three Times Alleged {¶ 3} In March 2003, fifteen-year-old Kevin Lockwood told his mother, Donna Haverland, that his step-uncle, William Haverland, had been sexually abusing him for a number of years. Before the disclosure, Lockwood's scholastic performance had dropped, and he had often been in "trouble" for violent behavior towards his immediate family.
 {¶ 4} Lockwood was interviewed by counselors, a police detective, and other medical and legal professionals about the abuse. He said that the sexual abuse began on a camping trip in Kentucky when he shared a camper with his step-uncle. Lockwood also disclosed various other instances of abuse that occurred at Haverland's residence in Butler County and at Haverland's place of employment at Union Central Life Insurance Company in Hamilton County.
 {¶ 5} Lockwood's mother had suspected that some sort of abuse had been going on before her son told her about it. She described instances where Haverland, in an almost desperate tone, would ask when he could see her son again. She also detailed how Haverland had given her son gifts, including a computer, and taken him on fishing outings. Her son also went to work with Haverland on Saturday mornings at Union Central in Forest Park.
 {¶ 6} Forest Park Police Detective Patrick Carr investigated the offenses that occurred at Union Central. Lockwood showed Detective Carr two rooms at Union Central where he and Haverland had engaged in fellatio. Springdale Police Detective Pat Kemper was called in to assist in the investigation. Detective Kemper used a crime scope to find and collect samples on the floors of those two rooms.
 II. Pretrial Motions {¶ 7} Joan Dawson-Burke, a criminalist and serology specialist with the Hamilton County Coroner's laboratory, conducted the analysis on those samples. She identified four of the samples as semen and then did a DNA comparison with a known sample from Haverland and Lockwood. The DNA from the samples collected at Union Central matched the DNA of Haverland.
 {¶ 8} In November 2003 Haverland served a general request for discovery, including reports of examinations and tests. Later, in March 2004, Haverland moved to compel production of scientific materials pertaining to the DNA testing, including the underlying electronic data used by Dawson-Burke to perform the SRT/DNA test. In support of his motion, Haverland filed the affidavit of his expert, Dr. Dan Crane, who stated that the electronic files were necessary for him to evaluate the results of Dawson-Burke's STR/DNA testing.
 {¶ 9} The state informed Haverland that the underlying electronic data files had been inadvertently destroyed. Haverland then moved to dismiss the charges or to suppress the use of DNA evidence in the case. The trial court denied the motion, but granted Haverland a continuance to test the remaining portion of the samples tested by Dawson-Burke. Haverland did not test the remaining portions.
 {¶ 10} Haverland also sought discovery of Lockwood's juvenile-court records, Lockwood's school, medical, and psychiatric/psychological records, and Hamilton County Department of Jobs and Family Services records involving the victim. After an in camera review of these records, the trial court granted Haverland access to all the records except Lockwood's juvenile-court records.
 {¶ 11} The court denied Haverland's motion to compel Lockwood to submit to a mental-health evaluation.
 III. Protection of Juvenile-Court Records {¶ 12} In his first three assignments of error, Haverland challenges the trial court's pretrial orders. He argues in his first assignment of error that the trial court erred in overruling his motion to obtain Lockwood's juvenile-court records. He claims that these records were necessary for him to prepare his defense and to impeach Lockwood, and thus that the trial court's decision violated his Sixth Amendment rights.
 {¶ 13} The Sixth Amendment to the United States Constitution protects a defendant's right of confrontation as well as the right of compulsory process. The Fourteenth Amendment makes both rights obligatory on the states.[1]
 {¶ 14} The right to confront witness has been interpreted as providing two types of protection for criminal defendants: "the right physically to face those who testify against him, and the right to conduct cross-examination."[2] The right to confront witness is a trial right. Conversely, the right of compelled process is a constitutionally mandated rule of pretrial discovery.[3] These rights are related because a defendant cannot cross-examine a witness about information without first learning of the information.
 {¶ 15} Generally, juvenile-court records are protected as confidential under Ohio law.[4] But the records must be disclosed if the failure to do so denies a defendant evidence "that is both favorable to the accused and material to guilt or punishment."[5] Courts have considered evidence as material where there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense.[6] A reasonable probability is one "sufficient to undermine confidence in the outcome."[7]
 {¶ 16} Prior to denying Haverland's motion, the trial court undertook an in camera review of the records and determined that there was no information in the records that could be used in support of Haverland's defense, other than to generally attack the credibility of the victim. The court had already provided Haverland with other records following an in camera review, including Lockwood's school, medical, and psychiatric/psychological records, and records from the Hamilton County Department of Jobs and Family Services involving Lockwood.
 {¶ 17} We have reviewed these records on appeal and hold that the trial court had already provided Haverland with the material evidence needed to present his fabrication defense. Haverland in fact used this information during Lockwood's cross-examination to impeach him. Lockwood was asked about his violence towards his family members during the time period prior to his disclosing the abuse. He admitted to the violence, and he admitted that he was in "trouble" for his acts. He also admitted that his relationship with his family had improved significantly after disclosing the abuse. Not only was Haverland able to cross-examine Lockwood about this motive, but Lockwood had already testified that he was incarcerated for these fights.
 {¶ 18} The court's ruling prevented Haverland from using the fact of these adjudications to generally attack Lockwood's credibility. But this use is expressly prohibited under Ohio law,[8] and courts have held that this prohibition does not give rise to a Sixth Amendment violation.[9]
 {¶ 19} In sum, the trial court did not impinge upon Haverland's Sixth Amendment rights of confrontation and compulsory process. We overrule the first assignment of error.
 IV. Denial of Mental-Health Examination {¶ 20} In his second assignment of error, Haverland argues that the trial court erred in denying his motion for an independent psychiatric examination of the victim. He claims that because the victim was participating in therapy and had both anger problems and a criminal history, the evaluation was necessary to determine whether the accusations that formed the basis of the indictment were psychologically sound and without other psychological explanation.
 {¶ 21} Generally, a defendant does not have a right to compel a victim of unlawful sexual conduct to undergo a mental-health evaluation.[10] But the trial court, in its discretion, may order an examination under Crim.R. 16, which governs discovery in criminal cases.[11] Although Crim.R. 16 does not specifically provide for a judicially ordered mental-health evaluation of an alleged victim, the court may order an examination when necessary to further the ends of justice.[12] Permission to conduct an examination should be granted cautiously because of the potential to misuse the information, such as having an expert testify concerning the credibility of a witness. A defendant seeking this discovery must demonstrate that the evidence sought is both potentially exculpatory and not obtainable by other reasonable means.[13]
 {¶ 22} We hold that the trial court did not abuse its discretion in denying the motion, where Haverland did not demonstrate that the evidence would be used other than to impeach the victim's credibility, and where the court had provided Haverland with access to the victim's mental-health records. We note that the state did not present the testimony of a mental-health professional, and Haverland did not challenge Lockwood's competency to testify. Accordingly, the second assignment of error is overruled.
 V. DNA Evidence {¶ 23} In his third assignment of error, Haverland argues that the trial court erred in failing to suppress all DNA evidence, because the state failed to preserve the underlying electronic files as he requested. He claims that he was prejudiced because the portion of the sample tested by the state could never be reproduced for retesting or analysis.
 {¶ 24} A criminal defendant's right to due process is violated when the state fails to preserve materially exculpatory evidence, and when the state destroys potentially useful evidence in bad faith.[14] But Haverland does not allege bad faith.
 {¶ 25} We hold that Haverland waived his right to challenge the trial court's decision not to suppress the DNA evidence, because Haverland failed to take advantage of the trial court's offer to rectify any constitutional infirmity resulting from the state's failure to preserve the electronic DNA data files: Haverland could have tested the remaining portion of the DNA samples.
 {¶ 26} Haverland's argument that the two portions from the same DNA sample would have been different is unfounded. In support of this theory, he cites the affidavit of his expert, who stated that testing the remaining portion would not have allowed him to reproduce the underlying electronic file created by the state and to reproduce the DNA that was used up in that test. But nothing in his expert's affidavit demonstrated that the remaining portion would not be consistent with the portion already tested or that the remaining portion was deficient to render a reliable DNA result.
 {¶ 27} We note that Haverland did not challenge the reliability of the results at trial, and he did not cross-examine Dawson-Burke on the destruction of the electronic files.
 {¶ 28} Finally, we find a waiver on the basis that Haverland could have requested another remedy that would have avoided any constitutional violation — he could have requested that the state start over with another portion of the sample. For these reasons, we hold that he waived any due-process argument on appeal and overrule the assignment of error.
 VI. Sufficiency and Weight of the Evidence {¶ 29} In his fourth assignment of error, Haverland argues that the trial court erred in denying his motion for an acquittal. He also challenges the weight of the evidence to support his convictions.
 {¶ 30} To determine if a trial court erred in overruling a motion for acquittal under Crim.R. 29, the question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt.[15]
 {¶ 31} A weight-of-the-evidence claim concedes that there is some evidence on each element of the crime charged, but alleges that such evidence fails to prove guilt beyond a reasonable doubt. A review of the weight of the evidence puts the appellate court in the role of a "thirteenth juror."[16] We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[17] The weight given to the evidence, including witness credibility, is best left to the trier of fact.[18]
 {¶ 32} In this case, Haverland was charged with and convicted of two counts each of sexual battery, in violation of R.C.2907.04(A)(5), and unlawful sexual contact with a minor in violation R.C. 2907.04(A). He claims that Lockwood's inability to testify to specific dates when the sexual conduct occurred precluded his convictions.
 {¶ 33} The indictment and bill of particulars alleged that the sexual abuse occurred on or about February 8 and 22, 2003, and on March 8, 2003. At trial, Lockwood testified that Haverland molested him when he would accompany Haverland to his office at Union Central on Saturday mornings. Lockwood testified that he had to sign in and out every time he went to his uncle's office on the weekend. The sign-in sheet verified that the victim was with his uncle at Union Central on February 8 and 22, 2003, and on March 1, 2003.
 {¶ 34} Lockwood further testified that Haverland would initiate the sexual conduct, typically fellatio, after the two had finished working. Importantly, Lockwood specified that the conduct occurred in two places: a vacant office on the first floor and a storage room in the basement. He even described where in the rooms the sexual abuse would take place. The state presented semen samples from the floor in those two places that matched Haverland's DNA.
 {¶ 35} Admittedly, Lockwood was not able to confirm the actual dates of the sexual abuse, but the actual dates were not elements of the crimes. Lockwood's testimony that the sexual abuse occurred on more than one occasion during the time period in question was credible, and this testimony was corroborated by the Union Central sign-in sheets. Often minors who are victims of sexual abuse are unable to remember the precise dates and times of the offenses.
 {¶ 36} Lockwood was not able to say with certainty how many times he was abused in each room, but he testified that the abuse had occurred in both of the rooms where the semen samples were found.
 {¶ 37} We are not persuaded by Haverland's argument that the jury's failure to find him guilty on counts five and six demonstrates that the other convictions were not supported by sufficient, credible evidence. Conversely, we are persuaded that jury's verdict was consistent with the evidence. The jury found Haverland guilty of sexual abuse for two of the three alleged incidents of abuse. The presence of Haverland's semen in both of the places where Lockwood testified the abuse occurred demonstrated that Haverland had ejaculated at least once in each of those places, and at least twice in total.
 {¶ 38} Finally, we reject Haverland's argument that he could only be convicted of one incident of abuse because the state failed to prove specific, separately occurring offenses. An indictment and conviction for multiple counts of the same crime without any differentiation may violate a defendant's due-process rights to notice and to not be tried twice for the same crime.[19] But in this case, the state differentiated the counts in the indictment by dates, and the bill of particulars provided other details including the time and location of each offense. Importantly, the state presented evidence of sexual abuse on those dates: Lockwood's testimony that the abuse occurred on Saturdays when he went to work with his uncle, and the Union Central sign-in sheets for the dates specified in the indictment. Because of this differentiation, Haverland has failed to demonstrate a due-process violation.
 {¶ 39} We hold that Haverland's convictions were supported by sufficient, credible evidence. Accordingly, we overrule the fourth assignment of error.
 VII. Sexual-Predator Adjudication {¶ 40} In his fifth assignment of error, Haverland argues that the trial court erred in finding him a sexual predator, because the state did not present clear and convincing evidence that he would reoffend.
 {¶ 41} After the jury returned its verdict, but prior to sentencing, the trial court held a sexual-offender classification hearing under R.C. 2950.09. In order for Haverland to be designated a sexual predator, the state had to prove by clear and convincing evidence that (1) Haverland had been convicted of a sexually-oriented offense, and (2) that he was likely to engage in the future in one or more sexually-oriented offenses.[20]
 {¶ 42} The state met the first prong of the sexual-predator definition by demonstrating that Haverland had been found guilty of sexual battery and unlawful sexual contact with a minor, both sexually-oriented offenses.
 {¶ 43} In support of the second prong, the likelihood of recidivism, the state submitted the presentence-investigation report and Haverland's criminal record, which included a 1975 conviction for importuning involving a 10-year-old male and 1981 convictions for gross sexual imposition involving a 13-year-old male and a 10-year-old male. The state also relied upon the court-ordered clinical evaluation of Haverland by Dr. Carla Dreyer, a psychologist, who found a moderate-to-high risk of Haverland's reoffending.
 {¶ 44} After considering the factors set forth in R.C.2950.09(B)(3), including the facts of the underlying convictions, the trial court declared that the state had proved by clear and convincing evidence that Haverland was likely to engage again in a sexually-oriented offense. The court then adjudicated Haverland a sexual predator.
 {¶ 45} Haverland argues that his prior convictions for sexual offenses against minors did not clearly demonstrate a likelihood to reoffend in the near future, because the offenses occurred so long ago. But the standard is not when the defendant will reoffend, but if the defendant will likely reoffend. The state correctly points out that Haverland actually did reoffend and that a defendant's past behavior is often an important indicator of the defendant's propensity for future behavior.
 {¶ 46} In sum, we uphold the trial court's adjudication of Haverland as a sexual predator, and we overrule the fifth assignment of error.
 VIII. Sentencing Issues {¶ 47} In his final assignment of error, Haverland argues that his sentence was contrary to law. Haverland was convicted of sexual battery and unlawful sexual contact with a minor occurring on March 1, 2003, and of sexual battery and unlawful sexual contact with a minor occurring on February 8, 2003. The trial court imposed a four-year term of incarceration for each conviction but ordered that Haverland serve concurrent terms for the crimes occurring on the same date. The court then ordered that Haverland serve consecutive terms for each set of convictions, for a total of eight years.
 {¶ 48} Sexual battery and unlawful sexual contact with a minor when the offender is more than ten years older than the victim are both third-degree felonies carrying a prison term of one to five years. Haverland argues that since he had never served a prison term, the trial court was required to impose the shortest prison term for each conviction.
 {¶ 49} R.C. 2929.14(B)(2) provides that where an offender has not previously served a prison term, the court shall impose the shortest prison term authorized unless the court finds on the record that that shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender. This court has held that an offender's Sixth Amendment right to a jury trial is violated where the court bases the imposition of more than the minimum term upon facts not admitted by the defendant or proved to a jury beyond a reasonable doubt, such as those involved in a finding that the shortest prison term will demean the seriousness of the offense.[21] But a trial court may consider, consistent with the Sixth Amendment, an offender's prior convictions to enhance a sentence without resubmitting the facts of those convictions to a jury.[22] Accordingly, we have upheld the trial court's decision to impose more than the minimum prison term on an offender who had never been to prison where the decision was based expressly on the offender's criminal history.[23]
 {¶ 50} Our review of the record indicates that the trial court made the relevant and necessary finding to impose more than the minimum term and that this finding is supported by the record. Prior to imposing more than the minimum term, the court found that the shortest prison term would not adequately protect the public from future crime by Haverland. The court cited Haverland's criminal record and noted that Lockwood was Haverland's fourth young male victim of a sex crime. These prior convictions, which occurred over twenty years prior to Haverland's sexual abuse of Lockwood, were relevant because they helped to establish a pattern of conduct by Haverland.
 {¶ 51} We cannot clearly and convincingly find that the record does not support the court's finding or that this finding was contrary to law. Consequently, we cannot conclude that trial court erred in imposing more than the minimum term, even though Haverland had not previously served a prison term.
 {¶ 52} The court found an alternative basis for the sentence: that imposing only the minimum term would demean the seriousness of the offense. This finding by the court violated Haverland'sSixth Amendment rights, but the error was harmless in light of the court's articulation of a separate, legitimate basis to support more than the minimum term.[24]
 {¶ 53} Finally, Haverland challenges the trial court's imposition of consecutive terms. He argues that the court failed to make the appropriate statutory findings to support consecutive terms and that the court's imposition of consecutive terms violated his Sixth Amendment right to a jury.
 {¶ 54} We affirm the court's imposition of consecutive terms where the court made the relevant findings for imposing consecutive sentences[25] and gave its reasons for those findings,[26] and we cannot clearly and convincingly find that those findings are not supported by the record. The court found that consecutive terms were not disproportionate to the seriousness of Haverland's conduct in molesting his nephew on two occasions or disproportionate to the danger Haverland posed to the public as a sexual predator. And the court found that consecutive terms were necessary to protect the public because of Haverland's prior convictions for sex offenses involving young males and the evidence presented at the sexual-predator hearing that Haverland was likely to reoffend. Further, we have held that the Sixth Amendment jury-trial right is not implicated by the court's imposition of consecutive terms.27
 {¶ 55} Accordingly, we uphold the trial court's imposition of an eight-year term of incarceration, and we overrule Haverland's sixth assignment of error.
 {¶ 56} The judgment of the trial court is affirmed.
Judgment affirmed.
Doan, P.J., and Gorman, J., concur.
[1] Pennsylvania v. Ritchie (1987), 480 U.S. 39,107 S.Ct. 989, fn. 5.
[2] Id. at 51.
[3] Id. at 52.
[4] R.C. 2151.14 and 2151.358; Juv.R. 32.
[5] See Ritchie at 57.
[6] Id.
[7] Id.
[8] See Evid.R. 609(D); R.C. 2151.358(H).
[9] State v. Willman (1991), 77 Ohio App.3d 344, 346,602 N.E.2d 323.
[10] See State v. Zeh (1987), 31 Ohio St.3d 99,509 N.E.2d 414.
[11] See State v. Shoop (1993), 87 Ohio App.3d 462,622 N.E.2d 665.
[12] See State v. Stutts (Jan. 2, 1991), 9th Dist. No. 90CA004879.
[13] See State v. Gray (June 28, 1995), 1st Dist. No. C-940275.
[14] See State v. Benson, 152 Ohio App.3d 495,2003-Ohio-1944, 788 N.E.2d 693, ¶ 10.
[15] See State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, syllabus.
[16] See State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541.
[17] Id., citing State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717.
[18] State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, syllabus.
[19] See Valentine v. Konteh (C.A.6, 2004), 395 F.3d 626;State v. Hemphill, 8th Dist. No. 85431, 2005-Ohio-3726.
[20] See State v. Eppinger, 91 Ohio St.3d 158, 163,2001-Ohio-247, 743 N.E.2d 881.
[21] See State v. Montgomery, 159 Ohio App.3d 752,2005-Ohio-1018, 825 N.E.2d 250, at ¶ 12.
[22] See State v. Lowery, 160 Ohio App.3d 138,2005-Ohio-1181, 826 N.E.2d 340, at ¶ 43.
[23] See State v. McIntosh, 160 Ohio App.3d 544,2005-Ohio-1760, 828 N.E.2d 138, at ¶ 11.
[24] See Lowery, ¶ 46.
[25] R.C. 2929.14(E)(4).
[26] R.C. 2929.19(B)(2)(c); State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, paragraph one of the syllabus.