[Cite as *In re C.B.*, 2025-Ohio-1361.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| IN RE: C.B. | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. Kevin W. Popham, J.<br>Hon. David M. Gormley, J. |
| | Case No. 2024CA0004 |
| | O P I N I O N |
| CHARACTER OF PROCEEDINGS: | Appeal from the Morrow County Court of Common Pleas, Juvenile Division, Case No. 2021JD0059 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | April 16, 2025 |
| APPEARANCES: | |
| For State of Ohio | For C.B. |
| JAMES B. REESE, III<br>Assistant Prosecuting Attorney<br>60 East High Street<br>Mt. Gilead, Ohio 4338 | VICTORIA FERRY<br>Assistant Public Defender<br>250 E. Broad Street, Suite 1400<br>Columbus, Ohio 43215 |

*Hoffman, P.J.*

**{¶1}** Appellant C.B. appeals the May 3, 2024 Journal Entry entered by the Morrow County Court of Common Pleas, Juvenile Division, which imposed a Serious Youthful Offender designation and disposition, ordered him to complete a sex offender program, and classified him as a Tier III sex offender. Appellee is the State of Ohio.

STATEMENT OF THE CASE AND FACTS

**{¶2}** On April 22, 2021, the Morrow County Prosecutor filed a complaint, alleging Appellant, who was then 16 years old, was a delinquent child for committing acts which would constitute rape, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree if committed by an adult; and gross sexual imposition, in violation of R.C. 2907.05(A)(5), a felony of the fourth degree if committed by an adult. The charges arose after the Victim, the 4-year old child of Appellant's stepsister, disclosed Appellant had taken her into a closet and forced her to engage in inappropriate sexual activity.

**{¶3}** Appellant appeared before the trial court on May 6, 2021, and entered a denial to the allegations set forth in the complaint. The State filed an amended complaint on July 26, 2021, which changed the time frame of the offenses. Appellant waived arraignment and entered a denial to the allegations. The State moved to bind Appellant over to Common Pleas Court, but the trial court declined to do so. In response, the State filed a notice to seek a Serious Youthful Offender disposition. On August 30, 2022, the Morrow County Grand Jury indicted Appellant for Serious Youthful Offender disposition on both counts contained in the original complaint and the amended complaint.

**{¶4}** Appellant filed a Motion to Determine Competency to Stand Trial on November 30, 2022. The trial court ordered Appellant undergo a competency evaluation.

After receiving the report of the forensic psychologist, the trial court found Appellant competent to stand trial.

{¶5}   On July 25, 2023, the trial court conducted an in-camera interview of the Victim, who was 6 years old at the time. Via Journal Entry filed July 28, 2023, the trial court found the Victim incompetent to testify. The trial court based its finding on the Victim's inability "to accurately recall expressions and observations three years ago" and "to communicate what she observed" at the time of the offense. July 28, 2023 Journal Entry at p. 4.   Appellant filed a motion in limine, moving the trial court for an order prohibiting the State from admitting the Nationwide Children's Hospital Child Assessment Center interview with the Victim.  The State filed a memorandum contra.

{¶6}   The trial commenced on August 21, 2023. Prior to the jury being brought in, the trial court addressed the motion in limine. The trial court permitted the prosecutor and defense counsel to argue their respective positions. The trial court denied Appellant's motion in limine.

{¶7}   The following evidence was adduced at trial:

{¶8}   K.C., the Victim's father, testified, one evening shortly after Christmas, he observed the Victim exit the bathroom and approach T.C., the Victim's mother. As the Victim described something to T.C., which K.C. could not hear, T.C. started to cry.  K.C. asked the Victim to come to him and tell him what had happened. K.C. explained he did not know if the Victim had hurt herself "or what was going on." Trial Transcript, August 22, 2023, p. 34.  When K.C. questioned the Victim, the Victim responded Appellant had put his private parts in her mouth. K.C. asked the Victim to repeat what she had said. K.C. recalled the Victim "said the exact same thing and that's what she kept repeating." *Id.* at

p. 35. K.C. asked the Victim if she told T.C. the same thing and the Victim replied affirmatively. K.C. asked the Victim to describe what occurred. According to K.C., the Victim told him the incident occurred at her grandmother's house, Appellant had repeatedly asked the Victim to come to his bedroom, the Victim had initially declined, but then relented. The Victim disclosed what Appellant had done to her in his bedroom and in the closet. K.C. noted the Victim was "very distressed" and "embarrassed" as she detailed the incident, and was aware something bad had happened.

{¶9} T.C. testified her mother, J.B., who is also Appellant's mother, was the only person to babysit her children. T.C. and K.C. are parents to three children (The other two children will be referred to as "Sibling 1" and "Newborn," individually; and "Siblings," collectively). T.C. recalled, on December 27, 2020, the Victim approached her and said, "[Appellant] made me eat his private parts." *Id.* at p. 83. When T.C. questioned the Victim, the Victim repeated, "[Appellant] made me eat his private parts." *Id.* The Victim told T.C. Appellant brought her into a closet. T.C. described the Victim as "acting so embarrassed and * * * wouldn't even look up at me * * * seemed so distraught." *Id.* at p. 82. While the Victim spoke with K.C., T.C. went outside and telephoned J.B. and made her aware of the Victim's disclosure. T.C. was "mad and screaming" and informed J.B. she intended to file a police report. *Id.* at p. 84. J.B. told T.C. filing a police report would ruin Appellant's life and hung up on her.

{¶10} Thereafter, T.C. called the police, who instructed her to file a report. T.C. and the Victim proceeded to the Morrow County Sheriff's Department. The officer on duty was not comfortable speaking with the Victim because of the Victim's age. The Victim was referred to Nationwide Children's Hospital Child Assessment Center for a forensic

interview. When T.C. questioned the Victim about "what mommy was doing" when the incident occurred, the Victim responded, "I don't know, you didn't bring me with you." *Id.* at p. 90. T.C. acknowledged the Victim had no concept of time.

{¶11} Celeste Prince, formerly a forensic interviewer with Nationwide Children's Hospital Child Assessment Center, interviewed the Victim on January 8, 2021, and subsequently prepared her report. Prince explained a forensic interview is "a neutral fact finding interview used for the purpose of medical diagnosis and treatment." *Id.* at p. 118. The interviews are conducted one-on-one with the child/victim. The interviews are recorded. While the forensic interviewer speaks with the child/victim, a victim advocate meets with the parents or caregivers. After the interview, the child/victim undergoes a medical examination. Prince recalled she briefly spoke with K.C. before interviewing the Victim.

{¶12} Portions of the video of Prince's interview with the Victim were played for the jury. During the interview, the Victim disclosed Appellant took her into a closet and made the Victim "eat his private parts." *Id.* at p. 136. The Victim described how Appellant put his "[pee pee] in my mouth and drank the pee." *Id.* at p. 137. Prince noted the Victim's behavior was consistent with that of an average four-year-old. Prince noted the Victim's language was consistent "with what we expect of a four-year-old type of memory recall." *Id.* at p. 160. Prince explained, "younger children's recall of memories is not as specific; whereas, it doesn't happen in the same way that it does for us as adults. * * * And so, you get disclosures that aren't always as sequential or as specific as you might with an older teen or an adult." *Id.* Prince added a young child's construct of time, date, and number is not as developed as it is in older children.

**{¶13}** During cross-examination, defense counsel questioned Prince regarding incorrect answers provided by the Victim to establish the Victim did not understand the "rules" of the interview. Prince acknowledged she did not determine whether the Victim knew the difference between reality and make believe, and did not typically make such a determination. With respect to her report, Prince noted the report is a medical record prepared for the hospital.

**{¶14}** The State rested its case. Appellant called several family members as witnesses in his defense.

**{¶15}** J.B. testified she has five (5) children. T.C is the oldest and Appellant is the youngest. H.D., her other daughter, moved out of her home in August, 2020. J.B., R.T. (her boyfriend), and her three (3) sons C.D., G.B., and Appellant, all lived together during the period in question. The home is approximately 900 square feet with three (3) bedrooms and one (1) bathroom. G.B. and Appellant share a bedroom. Because the Victim had stated the incident occurred in a closet at J.B.'s home, defense counsel asked each witness to describe the closet in Appellant's bedroom. J.B. indicated access to the closet in Appellant and G.B.'s room was difficult due to the number of baskets storing clothes on the floor. Starting in mid-November, 2020, G.B. was attending school online. Appellant attended classes in person. Appellant had wrestling practice every day after school from 3 p.m. until 5 p.m., beginning in November and ending in February.

**{¶16}** J.B. stated she did not see the Victim and the Siblings "very much" in November, 2020, and "[n]ot at all at my house." Trial Transcript, August 23, 2023, at p. 23. She reaffirmed she did not babysit the Victim or the Siblings at her home in November, 2020. J.B. watched the Victim and the Siblings a few times in December, 2020, usually

on a Monday, when T.C. had to take Sibling 1 or the Newborn to an appointment. Sibling 1 had a standing physical therapy appointment every Monday. The Victim and Sibling 1 were at J.B.'s home on Thursday, December 17, 2020, as the Newborn had a doctor's appointment. Appellant was at school during the time J.B. was watching the Victim and Sibling 1. Appellant was home from school on December 21, 2020, because he was ill. J.B. did not see the Victim or any of T.C.'s family the week of Christmas.

{¶17} J.B. detailed the conversation she had with T.C. on December 27, 2020. When T.C. told J.B. about the allegations the Victim had made against Appellant, J.B. was shocked. J.B. told T.C. "[the Victim] hasn't been here, and [Appellant] literally hasn't seen [the Victim] for, like, two months. * * * I don't understand. [The Victim] hasn't been at our house." *Id.* at p. 37. J.B. recalled T.C. started screaming and hung up on her. T.C. called back and told J.B. she was going to the police. When J.B. confronted Appellant, Appellant denied the accusations.

{¶18} G.B., Appellant's older brother, testified he lived with J.B., R.T., Appellant, and C.D. in 2020. G.B. shared a bedroom with Appellant. During November and December, 2020, G.B. attended classes remotely due to a COVID outbreak at his school, but Appellant, who attended a different school, attended in-person. G.B. had a computer and desk set up in the shared bedroom. The camera on his computer was on during school hours. G.B. noted Appellant left for school at approximately 6:40 a.m., and returned after 5:00 p.m., after wrestling practice.

{¶19} On cross-examination, G.B. initially stated the Victim and the Siblings did not come to his house during November or December, 2020. G.B. subsequently agreed, if another witness stated the Victim and the Siblings were over multiple times during those

months, "they must have been over." *Id.* at p. 101. G.B. added, "How many times, the times that they were there, the days that they were there, I do not know." *Id.*

**{¶20}** C.D., Appellant's oldest brother, corroborated G.B.'s testimony Appellant attended school in-person in November and December, 2020. C.D. testified he did not see the Victim and the Siblings in November, 2020, because "[T.C.] was pretty paranoid about COVID and the newborn, obviously, and we didn't see her over November for those reasons," but saw them approximately three (3) times during the month of December. *Id.* at p. 130. C.D. indicated Appellant was not at the home when the Victim and the Siblings visited in December. He did not remember seeing the Victim and the Siblings the week before Christmas. C.D. recalled Appellant had COVID and was home from school on December 21, 2020, the day before his winter break started.

**{¶21}** The State called T.C. on rebuttal. T.C. stated she knew definitively the Victim was at J.B.'s home five (5) or six (6) times during November and December, 2020. T.C. specifically recalled she left the Victim with J.B. on December 23, 2020, because the Newborn had a well-baby visit. T.C. remembered Appellant was often at home during November and December, 2020, when she dropped off the Victim.

**{¶22}** The trial court instructed the jury on rape and the lesser included offense of gross sexual imposition. After hearing all the evidence and deliberating, the jury found Appellant delinquent for committing acts which would constitute rape if committed by an adult. Via Journal Entry filed September 8, 2023, the trial court found Appellant to be a delinquent child. The trial court delayed disposition pending the completion of a pre-sentence investigation report. The matter came on for disposition on March 4, 2024. Via Journal Entry filed May 3, 2024, the trial court imposed the discretionary Serious Youthful

Offender disposition and adjudicated Appellant a Tier III sex offender. The trial court also ordered Appellant to complete a sex offender program.

{¶23} It is from these journal entries Appellant appeals, raising the following assignments of error:

I. THE JUVENILE COURT ERRED WHEN IT ADMITTED THE STATEMENTS OF THE ALLEGED VICTIM FROM THE NATIONWIDE INTERVIEW, IN VIOLATION OF C.B.'S RIGHT TO CONFRONTATION AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10, OHIO CONSTITUTION.

II. A NON-TESTIFYING CHILD'S HEARSAY STATEMENTS ARE INADMISSIBLE UNDER EVID. R. 803(4) WHEN A TRIAL COURT CONDUCTS A COMPETENCY EVALUATION AND FINDS THAT HE OR SHE IS INCOMPETENT TO TESTIFY.

III. THE JUVENILE COURT ERRED WHEN IT ADMITTED THE STATEMENTS OF THE ALLEGED VICTIM TO HER PARENTS, IN VIOLATION OF C.B.'S RIGHT TO CONFRONTATION AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10, OHIO CONSTITUTION,

IV. WITHOUT THE HEARSAY STATEMENTS, THE JURY'S VERDICT IS SUPPORTED BY INSUFFICIENT EVIDENCE. FIFTH AND

FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; ARTICLE I, SECTION 10 AND 16, OHIO CONSTITUTION.

V. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED. FIFTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION; ARTICLE I, SECTION 10 AND 16, OHIO CONSTITUTION.

I

{¶24} In his first assignment of error, Appellant contends the trial court violated his right to confront witnesses against him in permitting the forensic interviewer from Nationwide Children's Hospital Child Assessment Center to testify regarding statements made to her by the Victim. According to Appellant, the testimony should have been excluded because the forensic interview was unrelated to medical diagnosis and treatment. We disagree.

{¶25} The Sixth Amendment to the United States Constitution protects the right of a criminal defendant "to be confronted with the witnesses against him." The "primary object" of this provision is to prevent unchallenged testimony from being used to convict an accused—a safeguard that applies to both federal and state prosecutions. *Crawford v. Washington*, 541 U.S. 36, 42, 53-54 (2004). The provision encompasses the rights to have a witness physically appear in the courtroom, to require the witness to testify under oath, and to force the witness to be subject to cross-examination. *See Maryland v. Craig*, 497 U.S. 836, 845-846 (1990).

{¶26} The Confrontation Clause applies only to "testimonial statements." *State v. Muttart*, 2007-Ohio-5267, ¶ 59. A statement is testimonial if it is made with " 'a primary

purpose of creating an out-of-court substitute for trial testimony.' " *State v. Montgomery*, 2016-Ohio-5487, ¶ 87, quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011).

**{¶27}** We note the United States Supreme Court has found "[s]tatements by very young children will rarely, if ever, implicate the Confrontation Clause." *Ohio v. Clark*, 576 U.S. 237, 247-248 (2015). The *Clark* Court explained, "[f]ew preschool students understand the details of our criminal justice system" and "young children 'have little understanding of prosecution.' " (Citation omitted) *Id.* at 248.

**{¶28}** In *State v. Arnold*, 2010-Ohio-2742, the Ohio Supreme Court considered the admissibility of statements made during interviews at child-advocacy centers. The issue in *Arnold* was whether a child's statements during such an interview were for medical diagnosis or treatment, making them "non-testimonial," or whether they primarily served a forensic or investigative purpose, making them "testimonial" in violation of the defendant's confrontation rights. The Supreme Court began its analysis by recognizing child-advocacy centers are unique insofar as a single interview with a child serves "dual purposes," which are: "(1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and (2) to elicit information necessary for medical diagnosis and treatment of the victim." *Id.* at ¶ 33.

**{¶29}** Reviewing the substance of the child's interview with the social worker, the *Arnold* Court found some of the child's statements primarily had a forensic or investigative purpose, and were not objectively necessary to resolve an ongoing emergency. *Id.* at ¶ 35. Those statements included, inter alia, the child's assertion the defendant had "shut and locked the bedroom door before raping her; her descriptions of where her mother and brother were while she was in the bedroom with Arnold, of Arnold's boxer shorts, of

him removing them, and of what Arnold's 'pee-pee' looked like; and her statement that Arnold removed her underwear." *Id*. at ¶ 34. The Ohio Supreme Court reasoned "[t]hese statements likely were not necessary for medical diagnosis or treatment. Rather, they related primarily to the state's investigation." *Id*. However, the *Arnold* Court also found other statements elicited during the forensic examination, like the sexual acts the defendant performed, were non-testimonial and were admissible because they were necessary for medical diagnosis and treatment. *Id.* at ¶ ¶ 37-38.

**{¶30}** The Ohio Supreme Court held, to the extent the evidence obtained during the interviews was to assist police in a "forensic investigation" of abuse, it is "testimonial;" therefore, the Confrontation Clause of the Sixth Amendment bars its introduction at trial. *Id.* at ¶ 36. However, to the extent the evidence is obtained to medically diagnose and treat a child, the evidence is non-testimonial and not barred from admission at trial. *Id.* at ¶ 41.

**{¶31}** Accordingly, in order to determine whether the statements made by the Victim to Celeste Prince were made for the purpose of medical diagnosis and treatment, as opposed to forensic investigative purposes, this Court must 'identify the primary purpose of the statements. See, *State v. Remy*, 2018-Ohio-2856, ¶ 55 (2nd Dist.), citing *Arnold*, at ¶ 28. "Whether the purpose of a child's statements is for medical diagnosis or treatment will depend on the facts of the particular case." *State v. Jones*, 2015-Ohio-4116, ¶ 73 (2nd Dist.)

**{¶32}** Upon review of the evidence, and similar to the decision reached in *Arnold*, supra, we find the statements made by the Victim during the interview with Prince, regarding sexual acts, specifically, the Victim's statements Appellant made her "eat his

private parts" and put his "[pee pee] in my mouth and drank the pee," were necessary for medical diagnosis and treatment. Prince testified a forensic interview is "a neutral fact finding interview used for the purpose of medical diagnosis and treatment." August 22, 2023 Trial Tr. at p. 118. Accordingly, we find the Victim's statements were non-testimonial and did not violate Appellant's rights under the Confrontation Clause.

{¶33} Based upon the foregoing, Appellant's first assignment of error is overruled.

II

{¶34} In his second assignment of error, Appellant argues the trial court erred in admitting the hearsay statements of the Victim after finding the Victim was incompetent to testify. Appellant submits, once the trial court made such finding, the presumption of reliability of statements made for the purposes of medical diagnoses and treatment was defeated.

{¶35} Evid.R. 803(4) allows, as an exception to the hearsay rule, the admission of statements made in order to further medical treatment or diagnosis. Statements that are admissible under Evid.R. 803(4) are understood to be reliable because the effectiveness of treatment frequently depends upon the accuracy of the information related to medical professionals, and such statements are "reasonably relied on by [medical professionals] in treatment or diagnosis." *State v. Dever*, 64 Ohio St.3d 401, 411 (1992).

{¶36} In *State v. Dever*, the Ohio Supreme Court addressed the issue raised by Appellant herein, to wit: whether the trial court abused its discretion in allowing a member of a sexual abuse intervention team "to repeat at trial statements [the child victim] made to her during the medical examination as an Evid.R. 803(4) hearsay exception?" *Id.* at

404. In *Dever*, the trial court determined the child victim was incompetent to testify at trial under Evid.R. 601, but permitted the doctor who examined the child victim to repeat statements the child victim made pursuant to Evid.R. 803(4). *Id.* at 402-403. The *Dever* Court found the trial court did not err in admitting the child victim's statements under the Evid.R. 803(4) hearsay exception and held "[s]tatements made by a child during a medical examination identifying the perpetrator of sexual abuse, if made for purposes of diagnosis and treatment, are admissible pursuant to Evid.R. 803(4), when such statements are made for the purposes enumerated in that rule." *Id.* at paragraph two of the syllabus.

{¶37} In accord with *Dever*, supra, we find the trial court properly evaluated the circumstances accompanying the Victim making her statements to Celeste Prince during the forensic interview. Because there is insufficient reason to doubt the statements were made for purposes of medical diagnosis or treatment, we find the trial court did not abuse its discretion in admitting the statements pursuant to Evid.R. 803(4). "Neither Evid.R. 803(4) nor 102 requires exclusion of the child's statements from the evidence, when as here the record supports the trial court's determination that the requirements of Evid.R. 803(4) were met." *Id.* at 413.

{¶38} The argument Appellant raises herein goes to the weight to be given the evidence, and not to its admissibility. The credibility of the Victim's statements was for the jury to evaluate in its role as factfinder. In addition, defense counsel had the opportunity to cross-examine Celeste Prince regarding the circumstances surrounding the Victim's making of the statements.

{¶39} Based upon the foregoing, Appellant's second assignment of error is overruled.

{¶40} In his third assignment of error, Appellant maintains the trial court violated his right to confront witnesses against him in permitting the Victim's parents, K.C. and T.C., to testify regarding statements made to them by the Victim. Specifically, Appellant asserts the statements made by the Victim to her parents do not fit within any exception to the hearsay rule as the statements were not made as the result of a startling event and were not made while the Victim was still under the stress of excitement caused by an event. We disagree.

{¶41} The trial court found the Victim's statements to her parents admissible under the excited utterance exception to the hearsay rule. Evid.R. 803(2) provides "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule.

{¶42} "An out-of-court statement qualifies as an excited utterance if '(1) the statement was made in reaction to a startling event; (2) the statement was made under the stress of excitement caused by the event; and (3) the statement relates to the event.'" *State v. Cooperstein*, 2019-Ohio-4724, ¶ 86 (12th Dist.), quoting *State v. Nitz*, 2004-Ohio-6478, ¶ 20 (12th Dist.).

{¶43} In *State v. Taylor*, 66 Ohio St.3d 295 (1993), the Ohio Supreme Court, recognizing children are likely to remain in a state of nervous excitement longer than an adult would, held "admission of statements of a child regarding sexual assault may be proper under the excited utterance exception even when they are made after a substantial lapse of time." *Id*. at 304. The *Taylor* Court found, "There is no per se amount of time after which a statement can no longer be considered to be an excited utterance. The

central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought." *Id.* at 303. "Therefore the passage of time between the statement and the event is relevant but not dispositive of the question." *Id.* The fact the statements were not contemporaneous with the incident does not take it out of the excited utterance exception. (Citations omitted.) *State v. Triplett*, 2013-Ohio-3114, ¶ 27 (5th Dist.). "[E]ach case must be decided on its own circumstances, since it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous exclamation." (Citations omitted.) *Taylor*, supra at 303.

**{¶44}** "The excited-utterance hearsay exception is treated differently when the declarant is an alleged sexually abused child; the test is extremely liberal." *In re D.M.*, 158 Ohio App.3d 780, ¶ 13 (8th Dist. 2004), citing *State v. Shoop*, 87 Ohio App.3d 462, 472 (3rd Dist. 1993). "The scrutiny for the child declarant is less than that for an adult. The liberal scrutiny is based on the court's recognition that young children are more trustworthy because of their limited reflective powers." *Id.*, citing *Taylor*, supra at 304, citing *State v. Wallace*, 37 Ohio St.3d 87, 88 (1988).

**{¶45}** Appellant argues the statements made by the Victim to her parents "regarding the incident 'lacked the spontaneous quality necessary for an excited utterance.' " (Citation omitted.) Brief of Appellant at p. 17. Appellant explains "the state was unable to prove the timeframe of when this alleged incident occurred," and K.C. and T.C. both testified the Victim had no concept of time. *Id.* Appellant concludes, "As such, the state could not demonstrate that there was not an opportunity for reflective thought,

and the presumption of reliability cannot be made." *Id.* We disagree with Appellant's assertions.

**{¶46}** We conclude, based on the circumstances of this case, because the Victim's statements were spontaneous, because the Victim was of such a young age, and because her statements did not indicate a reflective process, the statements constituted an excited utterance. We further find the trial court's ruling the Victim's statements qualify as an excited utterance under Evid. R. 803(2) was reasonable. The record does not reveal any evidence the Victim's statements were fabricated, distorted or reflective. Further, Appellant had the opportunity to cross-examine K.C. and T.C. regarding the circumstances surrounding the Victim's statements. Accordingly, we find the trial court did not violate Appellant's right to confront witnesses against him and properly admitted the Victim's statements under the excited utterance exception to the hearsay rule.

**{¶47}** Appellant's third assignment of error is overruled.

IV

**{¶48}** In his fourth assignment of error, Appellant posits, without the hearsay statements, his conviction was not supported by sufficient evidence.

**{¶49}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

**{¶50}** Appellant was found delinquent for committing acts which would constitute rape, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree if committed by an adult.

**{¶51}** R.C. 2907.02(A)(1)(b) provides:

> (A)(1) No person shall engage in sexual conduct with another when any of the following applies:
>
> * *
>
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
>
> *Id.*

**{¶52}** Having found no error in the trial court's admission of the Victim's statements, we find the evidence was sufficient to support Appellant's adjudication for the offense of rape. The Victim, who was four-years old at the time of the offense, told her mother Appellant took her into a closet and made her "eat his private parts." The Victim repeated the same details to her father as well as Celeste Prince, the forensic interviewer at Nationwide Children's Hospital Child Assessment Center.

**{¶53}** Appellant's fourth assignment of error is overruled.

{¶54} In his fifth assignment of error, Appellant challenges his conviction as against the manifest weight of the evidence.

{¶55} When conducting a manifest weight review, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A case should not be reversed as being against the manifest weight of the evidence except " 'in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*

{¶56} Appellant submits, "[e]ven with the admission of these hearsay statements, the state failed to provide a timeframe for this alleged incident." Brief of Appellant at p. 19. At trial, the State argued the incident occurred sometime in late 2020, and the Victim disclosed the incident on December 27, 2020. Appellant explains the evidence presented established he would not have been in J.B.'s home when the incident was alleged to have occurred. Appellant points to the testimony of J.B. and G.B. in support of his position.

{¶57} J.B. testified she did not babysit the Victim and the Siblings often in late 2020, because T.C. was home on maternity leave. J.B. noted she only babysat when Sibling 1 had her physical therapy appointments, which were typically on Monday mornings. Appellant was attending school in-person in November and December, 2020. Starting in November, Appellant had wrestling practice every day after school. Appellant also had wrestling practice during Christmas break. Appellant was home from school on

December 21, 2020, because he was ill. He had a COVID test scheduled at 11:20 a.m. that day.

**{¶58}** G.B. testified he shared a bedroom with Appellant. G.B was attending school online in November and December, 2020. He had his desk and computer set up in the shared bedroom. The computer camera was on throughout school hours. G.B. did not recall the Victim and the Siblings at the house during the last two months of 2020. He added, if J.B. was babysitting, the Victim and the Siblings would be in the living room.

**{¶59}** On rebuttal, T.C. stated she knew definitively the Victim was at J.B.'s home five (5) or six (6) times during November and December, 2020. T.C. specifically recalled she left the Victim with J.B. on December 23, 2020, because the Newborn had a well-baby visit. T.C. remembered Appellant was often at home during November and December, 2020, when she dropped off the Victim.

**{¶60}** The jury was free to accept or reject any or all of the evidence offered by the parties and assess the witnesses' credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." (Citations omitted.) *State v. Williams*, 2024-Ohio-5578, ¶ 66 (5th Dist.). It is the province of the jury to determine where the truth lies from conflicting testimony. (Citations omitted.) *State v. Sisson*, 2023-Ohio-1273, ¶ 42.

**{¶61}** The trier of fact, in this case the jury, was vested with the authority to weigh the evidence and assess the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967). Moreover, the jury was free to believe some,

all, or none of the testimony of any witnesses. *Domigan v. Gillette*, 17 Ohio App.3d 228, 229 (2nd 1984).

**{¶62}** We find the jury could reasonably infer J.B. babysat the Victim on a number of occasions in November and December, 2020, and Appellant was at the residence during those times. T.C. specifically recalled she left the Victim and Sibling 1 with J.B. on December 23, 2020, because the Newborn had a well-baby visit. Appellant was home sick on December 21, 2020, and his Christmas vacation commenced the next day. The Victim made her disclosure on December 27, 2020.

**{¶63}** Based upon the foregoing, we find Appellant's conviction was not against the manifest weight of the evidence.

**{¶64}** Appellant's fifth assignment of error is overruled.

**{¶65}** The judgment of the Morrow County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, P.J.
Popham, J. and
Gormley, J. concur