[Cite as *In re H.B.*, 2025-Ohio-2159.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| H.B. | : | Hon. Craig R. Baldwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| | : | Hon. Andrew J. King, J. |
| | : | |
| | : | |
| | : | Case No. CT2024-0088 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Muskingum County
                             Court of Common Pleas, Juvenile
                             Division, Case No. 22220381


JUDGMENT:                    Affirmed in part; Remanded in part


DATE OF JUDGMENT:            June 18, 2025


APPEARANCES:

For Appellant H.B.                    For Appellee State of Ohio

RICHARD HIXON                         RONALD L. WELCH
3808 James Court, Suite 2             Prosecuting Attorney
Zanesville, Ohio 43701                Muskingum County, Ohio


                                      By: KALLEN M. HADDOX
                                      Assistant Prosecuting Attorney
                                      Muskingum County, Ohio
                                      27 North Fifth St., P.O. Box 189
                                      Zanesville, Ohio 43702

*Baldwin, P.J.*

{¶1} The appellant, H.B., appeals from the decision of the juvenile court adjudicating him a delinquent child. Appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND THE CASE

{¶2} On or about February 19, 2022, appellant H.B. (DOB 11/06/2004), was at a weekly family dinner at which A.W. (DOB 11/18/2015) was also in attendance. H.B., who was 17 years old at the time, and A.W., who was 6 years old at the time, were alone together in a bedroom "playing doctor". Following the family gathering A.W.'s parents noticed odd changes in her behavior, including being eager to leave the family gathering when in the past she'd always begged to stay longer; seeming more tired than usual; being quiet and more withdrawn than usual; no longer being outgoing and instead keeping to herself; not wanting to her little brother to go into the bathroom with her; no longer wanting to help change her little brother's diapers; and, no longer wanting to hug or be hugged by boys. At some point A.W. told her parents about the incident. The Muskingum County Sheriff's Department was contacted and a report was filed, and A.W. was taken to Nationwide Children's Hospital where she was interviewed by Forensic Interviewer Woori Song. A video recording was made of Ms. Song's interview with A.W.

{¶3} A.W. told Ms. Song that she and H.B. were alone in a bedroom, and that H.B. took out the "part that he pees out of" and touched her "where she pees." A.W. described in detail how this event occurred, telling Ms. Song that H.B. made her "close her eyes and pretend she was dead," and gave her "a shot" by using his penis to touch her. A.W. showed Ms. Song how H.B. moved his hips back and forth when "the thing that he peed out of" was touching her.

**{¶4}** On June 28, 2022, the State of Ohio filed a juvenile delinquency complaint against H.B., alleging one count of Gross Sexual Imposition in violation of R.C. 2907.05(A)(4), a third degree felony; and, one count of Gross Sexual Imposition in violation of R.C. 2907.05(A)(1), a fourth degree felony.

**{¶5}** An adjudication hearing was conducted before the magistrate on October 23, 2023, and October 24, 2023. The trial court heard testimony from a dozen witnesses. A.W.'s parents testified regarding A.W.'s behavior both before and after the incident, summarized above. Deputy Matthew Kallgren, of the Muskingum County Sheriff's Office, testified regarding his response to a call concerning an alleged sexual assault, the statements he took from A.W.'s parents, his call to the on duty detective, his collection of evidence (including the pants A.W. was wearing at the time of the alleged sexual assault, the bed sheets that were on the bed on which the alleged sexual assault took place, and photographs of the home in which the incident occurred), and his advice to A.W.'s parents to take A.W. to Children's Hospital to be seen by a SANE nurse.[1] Detective Amy Thompson, who was the Muskingum County Sheriff's Office evidence detective at the time, testified regarding the chain of custody of the evidence collected. Detective Jeremy Archer of the Muskingum County Sheriff's Office testified regarding his investigation of the matter and his interviews with various witnesses, including the appellant; Detective Archer testified that after he viewed A.W.'s forensic interview he interviewed H.B. a second time, during which he noted a change in H.B.'s demeanor, including must less eye contact from H.B.  BCI Forensic Scientist Logan Schepeler testified regarding his

---

[1] A "SANE" nurse refers to a Sexual Assault Nurse Examiner, who is a registered nurse having specialized training to examine, collect evidence, and provide care for victims of sexual assault.

tests of the evidence collected, including the test results of the DNA evidence collected from the scene, and testified further that sperm fraction DNA evidence was found in the crotch area of the black pants A.W. was wearing at the time of the alleged sexual assault, and that he could not exclude the appellant, who had provided a cheek swab DNA sample, from that sperm fraction sample. Forensic examiner Song also testified regarding her forensic interview of A.W., summarized above, and statements made by A.W. during the interview. The recording of the forensic interview was played for the court and submitted into evidence. A.W. did not testify. The appellee called the appellant's mother as a witness to establish the appellant's date of birth, after which the appellee rested.

{¶6} The appellant called his aunt, T.B., as his first witness, who testified that A.W. always wanted to play with H.B. at family gatherings, that on the day in question A.W. was sitting on H.B.'s shoulders when she arrived, that A.W. did not appear fearful of H.B., that A.W. appeared upset when H.B. left the gathering, and that A.W. was present in the same house as H.B. after the incident without appearing fearful. H.B.'s minor cousin, C.B., testified that A.W. liked to play with H.B., that on the day of the incident he could see into the room where the incident allegedly occurred and did not see H.B. expose himself to A.W., and did not hear A.W. express any distress while in the room. H.B.'s grandmother, C.F.B., testified that A.W. liked to play with H.B., and liked to have piggyback rides, be on his shoulders or get picked up, all of which happened on the day in question. H.B. testified that, prior to the alleged incident, he and A.W. "were like -- almost, like best friends. So we'd play -- play when she wanted to play". H.B. testified that A.W. wanted to play doctor, that he put A.W. on the bed and played doctor with her, and

pretended to knock her out; however, he adamantly denied exposing himself to her, sexually assaulting her, or being otherwise sexually inappropriate with her.

{¶7} On December 20, 2023, the magistrate issued a Magistrate's Decision – Findings of Fact and Conclusions of Law adjudicating H.B. delinquent on both counts of gross sexual imposition as alleged in the complaint. H.B. filed objections to the magistrate's decision, and the issues raised therein were briefed by the parties.

{¶8} The matter came before the trial court on January 3, 2024, on H.B.'s objections to the magistrate's decision, after which the court issued a Disposition in which it checked the "Plea of Admit" box and "Youth was advised of consequences of plea and rights waived. Pleas entered freely, voluntarily w/o inducement. Reports of police, family, juvenile, provided a factual basis for support of plea" box, in addition to the "Finding of Guilt" box. On June 21, 2024, the trial court issued an Entry overruling H.B.'s objections.

{¶9} H.B. filed a timely appeal in which he sets forth the following four assignments of error:

{¶10} "I. THE TRIAL COURT ERRED ON THE FACE OF ITS JANUARY 3rd, 2024 ENTRY BY INDICATING THAT H.B ENTERED A PLEA OF ADMISSION AS TO BOTH COUNTS UNDER R.C 2907.05(A) WHEN H.B. DID NOT DO SO."

{¶11} "II. THE TRIAL COURT ERRED IN DETERMINING THAT THE STATEMENTS MADE BY A.W. DURING HER FORENSIC INTERVIEW WERE ADMISSIBLE, AS HER STATEMENTS DURING THE INTERVIEW WERE TESTIMONIAL IN NATURE AND A.W. WAS NEVER MADE AVAILABLE FOR CROSS EXAMINATION, IN VIOLATION OF H.B.'S CONSTITUTIONAL RIGHT TO CONFRONTATION."

**{¶12}** "III. THE TRIAL COURT ERRED IN DETERMINING THAT THE STATEMENTS MADE BY A.W. DURING HER FORENSIC INTERVIEW WERE ADMISSIBLE UNDER EVID. R. 803(4)."

**{¶13}** "IV. THE TRIAL COURT ERRED IN FINDING H.B. TO BE A DELINQUENT CHILD, AS SUCH A FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND BASED ON INSUFFICIENT EVIDENCE."

## ASSIGNMENT OF ERROR I

**{¶14}** The appellant argues in his first assignment of error that the trial court erred on the face of its January 3, 2024, Disposition entry because it incorrectly checked boxes indicating that H.B. entered a plea of admission as to both counts of gross sexual imposition when he did not. We agree.

**{¶15}** Crim.R. 36 provides that "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." This issue was addressed by the Ohio Supreme Court in *State ex rel. DeWine v. Burge*, 2011-Ohio-235, in which the Court stated:

> . . . "[C]ourts possess inherent authority to correct clerical errors in judgment entries so that the record speaks the truth." *State ex rel. Cruzado v. Zaleski,* 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19. "[N]unc pro tunc entries 'are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided.' " *Mayer,* 97 Ohio St.3d 276, 2002-Ohio-6323, 779 N.E.2d 223, ¶ 14, quoting *State ex rel. Fogle v. Steiner* (1995), 74 Ohio St.3d 158, 164, 656 N.E.2d 1288. A nunc pro tunc entry is often used to correct a sentencing entry that, because of a

mere oversight or omission, does not comply with Crim.R. 32(C). See, e.g., *State v. Havugiyaremye,* Lucas App. No. L–08–1201, 2010-Ohio-4204, 2010 WL 3482546, ¶ 1, fn. 1; *State v. Evans,* Medina App. No. 09CA0102–M, 2010-Ohio-2514, 2010 WL 2245587, ¶ 2.

> Consistent with the treatment of Crim.R. 32(C) errors as clerical mistakes that can be remedied by a nunc pro tunc entry, we have expressly held that "the remedy for a failure to comply with Crim.R. 32(C) is a revised sentencing entry rather than a new hearing." *State ex rel. Alicea v. Krichbaum,* 126 Ohio St.3d 194, 2010-Ohio-3234, 931 N.E.2d 1079, ¶ 2; see also *State ex rel. Culgan v. Medina Cty. Court of Common Pleas,* 119 Ohio St.3d 535, 2008-Ohio-4609, 895 N.E.2d 805, ¶ 10–11 (a defendant is entitled to a sentencing entry that complies with Crim.R. 32(C)); *Dunn v. Smith,* 119 Ohio St.3d 364, 2008-Ohio-4565, 894 N.E.2d 312, ¶ 10 (when a trial court fails to comply with Crim.R. 32(C), "the appropriate remedy is correcting the journal entry").

*Id.* at ¶¶ 17-18. The issue of nunc pro tunc entries was recently discussed by this Court in *State v. Richmond*, 2025-Ohio-1076 (5th Dist.):

> The very purpose of a "nunc pro tunc" entry is to memorialize judicial action previously taken but unintentionally omitted from the written entry. *Bonnell,* ¶ 30. It is a simple device by which a court may make its journal speak the truth. *State v. Boler,* 2021-Ohio-4081, 2021 WL 5356851, ¶ 9, citing *State ex rel. Fogle v. Steiner,* 74 Ohio St.3d 158, 163-164, 656 N.E.2d 1288 (1995); see also Crim. R. 36 ("Clerical mistakes in judgments, orders,

or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time"). Thus, "nunc pro tunc" entries are limited in proper use to reflecting what the court in fact decided, not what it might or should have decided or even what the court intended to decide. *Fogle,* 74 Ohio St.3d at 164, 656 N.E.2d 1288.

*Id.* at ¶ 14.

{¶16} The trial court's checkmarks indicating that the appellant entered a plea of admit were clearly clerical mistakes, particularly in light of the fact that it also placed a checkmark indicating that there was a "finding of guilt." This error can be corrected through a nunc pro tunc entry. Accordingly, we remand the matter to the trial court with instructions to issue a "nunc pro tunc" Disposition entry specifically indicating a "finding of guilty" only.

### ASSIGNMENTS OF ERROR II and III

{¶17} The appellant's second and third assignments of error are interrelated, and as such we shall address them together. The appellant argues in his second assignment of error that statements made by A.W. during her forensic interview were testimonial in nature, that A.W. was never made available for cross examination, and that the trial court erred in admitting the statements in violation of H.B.'s constitutional right to confront witnesses testifying against him. In his third assignment of error he submits that the statements made by A.W. during her forensic interview were not admissible under Evid. R. 803(4), and the trial court erred in admitting them. We disagree.

**{¶18}** The issues of confrontation and hearsay relative to a forensic interviewer's testimony regarding statements made to the interviewer by a child victim were recently addressed by this Court in *In re C.B.*, 2025-Ohio-1361 (5ᵗʰ Dist.):

> The Sixth Amendment to the United States Constitution protects the right of a criminal defendant "to be confronted with the witnesses against him." The "primary object" of this provision is to prevent unchallenged testimony from being used to convict an accused—a safeguard that applies to both federal and state prosecutions. *Crawford v. Washington*, 541 U.S. 36, 42, 53-54 (2004). The provision encompasses the rights to have a witness physically appear in the courtroom, to require the witness to testify under oath, and to force the witness to be subject to cross-examination. *See Maryland v. Craig*, 497 U.S. 836, 845-846 (1990).
>
> The Confrontation Clause applies only to "testimonial statements." *State v. Muttart*, 2007-Ohio-5267, ¶ 59. A statement is testimonial if it is made with " 'a primary purpose of creating an out-of-court substitute for trial testimony.' " *State v. Montgomery*, 2016-Ohio-5487, ¶ 87, quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011).
>
> We note the United States Supreme Court has found "[s]tatements by very young children will rarely, if ever, implicate the Confrontation Clause." *Ohio v. Clark*, 576 U.S. 237, 247-248 (2015). The *Clark* Court explained, "[f]ew preschool students understand the details of our criminal justice system" and "young children 'have little understanding of prosecution.' " (Citation omitted) *Id.* at 248.

*Id.* at ¶¶ 25-27. The Court went on to cite the seminal case of *State v. Arnold,* 2010-Ohio-2742:

> In *State v. Arnold*, 2010-Ohio-2742, the Ohio Supreme Court considered the admissibility of statements made during interviews at child-advocacy centers. The issue in *Arnold* was whether a child's statements during such an interview were for medical diagnosis or treatment, making them "non-testimonial," or whether they primarily served a forensic or investigative purpose, making them "testimonial" in violation of the defendant's confrontation rights. The Supreme Court began its analysis by recognizing child-advocacy centers are unique insofar as a single interview with a child serves "dual purposes," which are: "(1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and (2) to elicit information necessary for medical diagnosis and treatment of the victim." *Id.* at ¶ 33.

> Reviewing the substance of the child's interview with the social worker, the *Arnold* Court found some of the child's statements primarily had a forensic or investigative purpose and were not objectively necessary to resolve an ongoing emergency. *Id.* at ¶ 35. Those statements included, inter alia, the child's assertion the defendant had "shut and locked the bedroom door before raping her; her descriptions of where her mother and brother were while she was in the bedroom with Arnold, of Arnold's boxer shorts, of him removing them, and of what Arnold's 'pee-pee' looked like; and her statement that Arnold removed her underwear." *Id.* at ¶ 34. The Ohio

Supreme Court reasoned "[t]hese statements likely were not necessary for medical diagnosis or treatment. Rather, they related primarily to the state's investigation." *Id.* However, the *Arnold* Court also found other statements elicited during the forensic examination, like the sexual acts the defendant performed, were non-testimonial and were admissible because they were necessary for medical diagnosis and treatment. *Id.* at ¶¶ 37-38.

The Ohio Supreme Court held, to the extent the evidence obtained during the interviews was to assist police in a "forensic investigation" of abuse, it is "testimonial;" therefore, the Confrontation Clause of the Sixth Amendment bars its introduction at trial. *Id.* at ¶ 36. However, to the extent the evidence is obtained to medically diagnose and treat a child, the evidence is non-testimonial and not barred from admission at trial. *Id.* at ¶ 41.

Accordingly, in order to determine whether the statements made by the Victim to Celeste Prince were made for the purpose of medical diagnosis and treatment, as opposed to forensic investigative purposes, this Court must 'identify the primary purpose of the statements.' See, *State v. Remy*, 2018-Ohio-2856, ¶ 55 (2nd Dist.), citing *Arnold*, at ¶ 28. "Whether the purpose of a child's statements is for medical diagnosis or treatment will depend on the facts of the particular case." *State v. Jones*, 2015-Ohio-4116, ¶ 73 (2nd Dist.)

*In re C.B.* at ¶¶ 28-31.

**{¶19}** Upon our review of the evidence, and in line with the decisions in *C.B.* and *Arnold,* we find the statements made by A.W. during the interview with Forensic Interviewer Song regarding sexual acts, particularly A.W.'s statements that H.B. took out the "part that he pees out of" and touched her "where she pees," made her "close her eyes and pretend she was dead," gave her "a shot" by using his penis to touch her and pinned her down, and showed Ms. Song how H.B. moved his hips back and forth when "the thing that he peed out of" was touching her, were necessary for medical diagnosis and treatment. We find that the statements made by A.W. were non-testimonial and did not violate H.B. rights under the Confrontation Clause.

**{¶20}** Furthermore, the statements were not precluded from admission by the hearsay rule. As set forth by the Court in *C.B.*:

> Evid.R. 803(4) allows, as an exception to the hearsay rule, the admission of statements made in order to further medical treatment or diagnosis. Statements that are admissible under Evid.R. 803(4) are understood to be reliable because the effectiveness of treatment frequently depends upon the accuracy of the information related to medical professionals, and such statements are "reasonably relied on by [medical professionals] in treatment or diagnosis." *State v. Dever*, 64 Ohio St.3d 401, 411 (1992).
>
> In *State v. Dever*, the Ohio Supreme Court addressed the issue raised by Appellant herein, to wit: whether the trial court abused its discretion in allowing a member of a sexual abuse intervention team "to repeat at trial statements [the child victim] made to her during the medical

examination as an Evid.R. 803(4) hearsay exception?" *Id.* at 404. In *Dever*, the trial court determined the child victim was incompetent to testify at trial under Evid.R. 601 but permitted the doctor who examined the child victim to repeat statements the child victim made pursuant to Evid.R. 803(4). *Id.* at 402-403. The *Dever* Court found the trial court did not err in admitting the child victim's statements under the Evid.R. 803(4) hearsay exception and held "[s]tatements made by a child during a medical examination identifying the perpetrator of sexual abuse, if made for purposes of diagnosis and treatment, are admissible pursuant to Evid.R. 803(4), when such statements are made for the purposes enumerated in that rule." *Id.* at paragraph two of the syllabus.

*Id.* at ¶¶ 35-36. Just as the Court found in *C.B.*, we find that the trial court properly evaluated the circumstances under which A.W. made her statements to Ms. Song during the forensic interview. There is insufficient reason to doubt that the statements were made for the purpose of medical diagnosis and treatment. Accordingly, the trial court did not abuse its discretion in admitting the statements, as "neither Evid.R. 803(4) nor 102 requires exclusion of the child's statements from evidence, when as here the record supports the trial court's determination that the requirement of Evid.R. 803(4) were met." (Citation omitted.) *Id.* at ¶37.

{¶21} Based upon the foregoing, we find appellant's assignments of error numbers two and three to be without merit, and they are therefore overruled.

## ASSIGNMENT OF ERROR IV

{¶22} The appellant argues in his fourth assignment of error that the decision of the trial court adjudicating him delinquent on two counts of gross sexual imposition was against the manifest weight of the evidence and was not based on sufficient evidence. We disagree.

{¶23} Sufficiency of the evidence was addressed by the Ohio Supreme Court in *State v. Worley,* 2021-Ohio-2207:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 219.

*Id.* at ¶57. Thus, a review of the constitutional sufficiency of evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence

in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**{¶24}** Manifest weight of the evidence, on the other hand, addresses the evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 1997–Ohio–355. The Court stated:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) Black's, *supra,* at 1594.

*Id.* at 387. The Court stated further:

> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether

in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*

**{¶25}** In addition, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

**{¶26}** "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

*{¶27}* The trial court heard the testimony described in detail above, and was free to accept or reject any or all of the evidence offered by the parties and assess the veracity of the witnesses. As set forth by the Court in *C.B., supra*:

. . ."While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." (Citations omitted.) *State v. Williams*, 2024-Ohio-5578, ¶ 66 (5th Dist.). It is the province of the jury to determine where the truth lies from

conflicting testimony. (Citations omitted.) *State v. Sisson*, 2023-Ohio-1273, ¶ 42.

The trier of fact, in this case the jury, was vested with the authority to weigh the evidence and assess the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967). Moreover, the jury was free to believe some, all, or none of the testimony of any witnesses. *Domigan v. Gillette*, 17 Ohio App.3d 228, 229 (2nd 1984).

*Id.* at ¶60-61.

{¶28} In this case, the trial court, as the trier of fact, possessed the authority to weigh the evidence and ascertain the veracity of the witnesses, and to believe some, all, or none of the testimony. Based upon the evidence presented, the trial court found beyond a doubt that the appellant was adjudicated to be a delinquent child on two counts of gross sexual conduct. We find that the evidence adduced at the adjudication "is legally sufficient to support the jury verdict as a matter of law." Furthermore, there is no evidence that the trier of fact lost its way resulting in a manifest miscarriage of justice. Accordingly, we find that appellant's assignment of error number four to be without merit.

## CONCLUSION

{¶29} Based upon the foregoing, the appellant's assignment of error number one is narrowly sustained and the matter remanded to the trial court for the sole purpose of issuing a "nunc pro tunc" Disposition entry specifically indicating a "finding of guilty" only. The appellant's assignments of error numbers two, three, and four are overruled, and the decision of the Muskingum County Court of Common Pleas, Juvenile Division, with regard to those assignments of error, is hereby affirmed.

By: Baldwin, P.J.

King, J. concur

Hoffman, J. concurs separately.

*Hoffman, J., concurring*

**{¶30}** I concur in the majority's analyses and disposition of Appellant's first and fourth assignments of error. I further concur, in general, with the majority's analysis of Appellant's second and third assignments of error and concur in its decision to overrule them. My disagreement with part of its analysis follows.

**{¶31}** The majority lists a number of statements made by A.W. to Interviewer Ms. Song finding them to be necessary for medical diagnosis and treatment; and therefore, non-testimonial.[2] Of those listed, I do not believe A.W.'s statement H.B. made her "close her eyes and pretend she was dead" was necessary for medical diagnosis and treatment. I find it is testimonial in nature. However, I find its admission does not violate the Confrontation Clause because at A.W.'s young age, she would not have understood her statement would likely be used in a subsequent prosecution.[3]

**{¶32}** However, a different analysis is necessary in determining whether that same statement violates the hearsay rule. Unlike the majority which concluded such statement satisfies the medical diagnosis and treatment exception found in Evid.R. 803(4), (which conclusion I have already disagreed with, *supra*), I find it was error to admit it. The issue then becomes whether its admission was prejudicial.

---

[2] Appellant lists additional statements A.W. made in her interview by Ms. Song not mentioned in the majority's analysis. (See Appellant's Brief at pp. 13-14). Some I find qualify as being related to medical diagnosis and treatment and therefore, are non-testimonial and also admissible as a hearsay exception. Others I do not so find. Some I would find were for investigative purposes. I choose not to address them individually herein as I find none of them violate the Confrontation Clause in this case based upon A.W.'s age. I find admission of those that do not qualify as an exception to the hearsay rule under Evid.R. 803(4) amounted to harmless error.

[3] This same analysis applies to other statements of A.W., as testified to by Ms. Song, that would be considered testimonial in nature. As such, their admission does not constitute a violation of the Confrontation Clause in this case.

{¶33} While Appellant asserts the trial court's own entry explicitly emphasizes the alleged improperly admitted testimonial statements of A.W., my review of that entry does not lead me to such conclusion.[4] The magistrate's FINDINGS OF FACT is a misnomer. In reality, it is mostly a reiteration of the various witnesses' testimony without a specific affirmation the magistrate found them to be established as fact.

{¶34} The only explicit reference to an improperly admitted statement of A.W. considered by the magistrate in adjudicating Appellant delinquent is found in the magistrate's CONCLUSION OF LAW. Therein, the magistrate notes H.B.'s criminal conduct occurred while he and A.W. were playing doctor.

{¶35} Significantly, and as noted in the majority opinion, H.B. testified he played doctor with A.W. As such, any error associated with A.W.'s statement to that effect is certainly harmless. Likewise, I find admission of A.W.'s statement H.B. made her "close her eyes and pretend she was dead" was harmless error.

---

[4] Appellant is apparently referring to the magistrate's decision, not that of the trial court. However, the trial court found "no error of law or other defect on its face" when overruling Appellant's objections to the magistrate's decision.